785 P.2d 667

**Archie J. WINTER,
Petitioner–Respondent,**

v.

**STATE of Idaho, Respondent–Appellant.**

**No. 17707.**

Court of Appeals of Idaho.

Nov. 3, 1989.

**104**

Jim Jones, Atty. Gen. by Michael A. Henderson, Deputy Atty. Gen., Boise, for respondent-appellant.

No appearance by petitioner-respondent.

BURNETT, Judge.

This is a habeas corpus case. We are asked to decide whether a person in custody of the Board of Correction is entitled to a credit against his sentence for time spent on parole. We hold that where, as here, the parole has been revoked, any such credit is statutorily precluded.

The facts framing the issue are as follows. Archie Winter was convicted of first degree burglary in 1976. The district court imposed an indeterminate ten-year prison term. In the course of serving that sentence, Winter was paroled four times, only to have each parole revoked for alcohol-related violations. Upon each revocation, credit for time spent on parole was disallowed pursuant to the following language of I.C. § 20–228:

> The commission for pardons and parole, in releasing a person on parole, shall specify in writing the conditions of his parole, and a copy of such conditions shall be given to the person paroled. Whenever the commission finds that a prisoner may have violated the conditions of his parole, the written order of the commission, signed by a member or members of the commission, shall be sufficient warrant for any law enforcement officer to take into custody such person.... Such warrant shall serve to suspend the person's parole until a determination on the merits of the allegations of the violation has been made after hearing.... *Such person so recommitted must serve out his sentence, and the time during which such prisoner was out on parole shall not be deemed a part thereof*, but nothing herein contained shall prevent the commission from again paroling such prisoners at its discretion. [Emphasis added.]

Winter returned to prison for the fourth time in 1987. By then, eleven years had elapsed since imposition of the ten-year indeterminate sentence. Approximately five of these years had been spent in confinement; the remainder had been consumed by the unsuccessful paroles. Believing that his sentence had expired, Winter filed a petition for habeas corpus. A magistrate denied the petition. On appeal, however, the district court reversed. For reasons which we will examine in a moment, the district court held that I.C. § 20–228 was inapplicable to the particular circumstances presented in Winter's case. The state then appealed, and the Supreme Court assigned the case to us.

Upon receiving the case, we noted that the state had not applied for a stay of the district court's decision. Consequently, in dutiful compliance with that decision, the magistrate entered a supplementary order granting Winter's petition for habeas corpus and directing him to be discharged. Presuming that the Board of Correction would follow such a directive, we asked the state to show cause why this appeal should not be dismissed for mootness. In response, the state acknowledged that Winter indeed had been discharged. The state argued, however, that the discharge could be rescinded if the district court's decision were reversed. Moreover, the state urged us to retain the appeal under the public interest exception to the mootness doctrine, there being numerous other cases in the correctional system posing the same issue framed by Winter's petition.

We have concluded that the public interest exception is applicable here. *See, e.g., Dick v. Geist,* 107 Idaho 931, 693 P.2d 1133 (Ct.App.1985) (declining to dismiss appeal concerning enforcement of restrictive employment covenant because issue was of

substantial public interest and was likely to recur in other cases). Therefore, we will decide this appeal on its merits. In doing so, however, we intimate no view on whether Winter's discharge could, or should, be rescinded. That question would arise only if the Board of Correction eventually attempted to regain custody of Winter. The question is not ripe for our review.

## I

The district judge avoided the application of I.C. § 20–228 to this case by carving out a judicial exception to its express terms. The judge acknowledged the language broadly precluding any credit against a sentence for time spent during a revoked parole: "Such person so recommitted shall serve out his sentence, and the time during which such prisoner was out on parole shall not be deemed a part thereof...." The judge focused, however, upon the ensuing provision that "nothing herein contained shall prevent the [parole] commission from again paroling such prisoners at its discretion." The judge hypothesized that any new grant of parole to a prisoner would constitute a "reinstatement" of the previously revoked parole(s). Building upon this hypothesis, the judge further postulated that if the new parole were not revoked before the facial term of the sentence expired, all time spent during every parole could be credited against the sentence. In the judge's words:

> The rule can be boiled down to this: So long as a defendant is in prison, parole time does not count towards his sentence. If he is on parole, and for so long as he is on parole, all of his parole times—past and present—count together with his prison time. When, under either calculation, the original sentence is up, he is done.

Because Winter had been on parole when ten years elapsed under his sentence, the judge concluded that he was entitled to a discharge.

The district judge's memorandum opinion was exceptionally thoughtful and well-written. It appears, however, that the judge engaged in ambitious judicial construction

when he added his "reinstatement" hypothesis and his retroactive credit postulate to the language of I.C. § 20–228. There is no occasion for such judicial construction of a statute unless it is ambiguous, absurd or in conflict with other statutes on the same subject. We will examine these possibilities in turn.

## A

■ The district judge did not specifically identify any ambiguity in I.C. § 20–228, and we find none. It would be difficult to write clearer or more emphatic language than that by which the statute precludes any credit for time served during a revoked parole. This preclusion is not diluted by the statute's ensuing provision that the parole commission, in the exercise of its discretion, may parole an individual "again." This is simply an affirmation of the commission's power to grant parole whenever it deems the circumstances to be appropriate. It cannot be read reasonably to derogate from the statute's plain thrust—that time spent during a revoked parole cannot be credited against the sentence.

## B

■ Of course, a judge may apply a saving construction to a statute if its language, although clear, would lead to absurd results which the legislature obviously could not have intended. *Gavica v. Hanson*, 101 Idaho 58, 608 P.2d 861 (1980). Here, as the district judge noted, the literal language of I.C. § 20–228 arguably could produce harsh results. In a case where parole is revoked after many years—or, as in this case, where parole is revoked many times—an individual could find himself in custody after the facial term of his sentence had elapsed.

But we are not prepared to say, as was the district judge, that such results are so harsh that they could not have been within our Legislature's intent. The statutory scheme provides an incentive to comply with parole conditions. Any extended period of custody is a result of the individual's own conduct in accepting, and then violat-

ing, the conditions of parole. Moreover, although it may seem anomalous for an individual to be subject to the jurisdiction of the Board of Correction for a period longer than the facial length of his sentence, the anomaly is superficial. The underlying question is whether time spent during a revoked parole should be counted against the sentence. Our legislature has said "No," as have the legislatures of approximately half the other states. Singer and Hand, *Sentencing Computation: Laws and Practices,* 10 CRIM.L.BULL. 318, 335 (1974). We hold that the statute is not absurd and, therefore, does not invite a saving construction.

### C

■ When a statute conveys a message which is neither ambiguous nor absurd, judicial construction might nevertheless be required to harmonize the statute with other legislative enactments on the same subject. *E.g., State v. Moore,* 111 Idaho 854, 727 P.2d 1282 (Ct.App.1986). In this case, the district judge suggested that I.C. § 20–228 would be inconsistent with I.C. §§ 20–233 and 20–239 unless a revoked parole were "reinstated" by a subsequent parole and all time spent during the revoked parole were credited against the sentence. We disagree. Neither I.C. § 20–233 nor I.C. § 20–239 mentions reinstatement of any revoked parole or credit for any time spent during revoked paroles.

Idaho Code § 20–239 simply provides for the discharge of prison inmates who have served "the maximum term fixed by the court...." Similarly, I.C. § 20–233 provides that if the term of the sentence "expire[s]" while an individual is on parole, the parolee shall be discharged. Neither of these statutes speaks to the specific issue presented in this case—how the "maximum sentence" shall be computed, and when it will "expire," if parole has been granted but subsequently revoked. The only statute which speaks to this question is I.C. § 20–228. Its plain language need not be modified by judicial construction to accommodate the other statutes.

Accordingly, we conclude that the capable district judge erred in carving out an exception to I.C. § 20–228 for those cases in which an individual is on parole when the facial length of his sentence elapses. We do not gainsay that the policy embodied in the statute is debatable. Indeed, we agree with the district judge's observation that the statute draws a simplistic distinction between imprisonment and parole—a distinction obsolete in light of modern transitional arrangements for achieving a smooth integration of the individual back into society. However, as Justice Holmes stated in his famous dissent in *Lochner v. New York,* 198 U.S. 45, 75, 25 S.Ct. 539, 551, 49 L.Ed. 937 (1906), "[our] agreement or disagreement [with the theory embodied in a statute] has nothing to do with the right of a majority to embody their opinions in law." We expressed a similar sentiment when we observed, in *Quintana v. Anthony,* 109 Idaho 977, 981, 712 P.2d 678, 682 (Ct.App.1985), that "[t]he courts possess no roving commission to rewrite contracts." A parallel measure of judicial restraint prohibits the judicial rewriting of statutes.

### II

■ Although the district judge reached his decision by statutory construction, Winter further argued that the Board of Correction lacked constitutional authority to exercise extended jurisdiction over him. Accordingly, we will consider whether I.C. § 20–228 harbors any constitutional defect, on its face or as applied to this case.

As we have noted, the statute allows the Board of Correction, an agency of the executive branch of government, to retain an individual in custody beyond the term prescribed by the sentencing judge. However, any contention that the statute thereby abridges the constitutional separation of powers was laid to rest in *Flores v. State,* 109 Idaho 182, 706 P.2d 71 (Ct.App.1985) (review denied). There, a special panel of our Court examined the constitutional structure of the state correctional system, concluding that the Legislature's grant of power to the Board of Correction under I.C. § 20–228 was within "both its inherent

and express constitutional authority set out in the Idaho Constitution." *Id.* at 184, 706 P.2d at 73.

Of course, all criminal sanctions are limited by the Eighth Amendment's proscription against cruel and unusual punishment. The Eighth Amendment prohibits "not only barbaric punishments, but also sentences that are disproportionate to the crime committed." *Solem v. Helm,* 463 U.S. 277, 284, 103 S.Ct. 3001, 3006, 77 L.Ed.2d 637 (1983). This prohibition has been incorporated into the due process clause of the Fourteenth Amendment and therefore applies to the states.

In this case, our inquiry takes account of time spent on parole as well as confinement. We have no doubt but that time served on parole is a form of punishment, albeit less serious than incarceration. As our own Supreme Court has said of parole:

> It certainly cannot be said that a man is a free man enjoying the liberty and freedom usually accorded other citizens when he is compelled to confine his movements to a specified locality and to report his conduct, his daily labor, his earnings and expenditures ... to a prison official....

*In re Prout,* 12 Idaho 494, 501, 86 P. 275, 277 (1906). Likewise, Justice Hugo Black spoke for an unanimous United States Supreme Court when he stated:

> [I]n fact, as well as theory, the custody and control of the Parole Board involve significant restraints on petitioner's liberty because of his conviction and sentence, which are in addition to those imposed by the state upon the public generally.... [These restrictions] restrain petitioner's liberty to do those things which in this country free men are entitled to do.

*Jones v. Cunningham,* 371 U.S. 236, 242–43, 83 S.Ct. 373, 376–77, 9 L.Ed.2d 285 (1962).

Because it is apparent that time on parole is a form of punishment, the Eighth Amendment potentially limits the impact of I.C. § 20–228. Nonetheless, we find no Eighth Amendment violation here. The crime of first degree burglary, for which Winter was originally sentenced, carries a maximum penalty of fifteen years in prison. I.C. § 18–1403. When Winter filed his petition for habeas corpus, he had served approximately five years in prison and had been on parole another six years. He would have been discharged in ten years but for his parole violations. Upon this record, we find no disproportionality constituting cruel and unusual punishment.

Accordingly, the decision of the district court, which overturned the magistrate's order dismissing Winter's petition for habeas corpus, is reversed. The case is remanded for such proceedings, if any, as may be appropriate and consistent with our opinion.

WALTERS, C.J., and SWANSTROM, J., concur.