924 P.2d 607

**J. Bayard MILLER, M.D.,
Plaintiff–Respondent,**

v.

**Frederick R. HALLER, M.D., and Jane Doe Haller, husband and wife; Thomas F. Prenger, M.D., and Jane Doe Prenger, husband and wife; and Silverton Medical Clinic, a general partnership consisting of Frederick R. Haller, M.D., and Thomas F. Prenger, M.D., Partners, Defendants–Appellants.**

Docket No. 21842.
1996 Opinion No. 118.

Supreme Court of Idaho,
Boise, April 1996 Term.

Sept. 3, 1996.

Rehearing Denied Oct. 28, 1996.

Ramsden & Lyons, Coeur d'Alene; Huppin Ewing Anderson & Paul, Coeur d'Alene, for appellants. Marc A. Lyons argued.

John H. Sahlin, (argued), Coeur d'Alene; Marvin H. Firestone, Half Moon Bay, California, for respondent.

TROUT, Justice

This appeal arises from the district court's grant of respondent's motion for a new trial pursuant to I.R.C.P. 60(b)(6).

## I.

## BACKGROUND

Dr. J. Bayard Miller filed suit against Dr. Frederick Haller and Dr. Thomas Prenger (Haller), his former partners in the Silverton Medical Clinic Partnership, alleging, among other things, that Haller had breached an oral contract with him. This alleged oral contract provided that, if Miller withdrew from the Silverton Partnership, Haller would continue to refer patients for general surgery to Miller in the same pattern as when the physicians were partners. Miller further claimed that, at the time the oral contract was made, Haller had no intention of referring surgery patients to him, as they had agreed, and that Haller's misrepresentations to that effect fraudulently induced Miller to enter into this contract with them. Miller also alleged that, from the time he left the partnership, Haller engaged in conduct that interfered with Miller's business and contractual relations.

At the close of Miller's case at trial, Haller brought a motion for a directed verdict with

regard to the oral contract, contending that such a contract was illegal and against public policy. The motion was denied by the district court. The jury was instructed, however, that, if they found an agreement to refer patients existed that would conflict with the best interests of the patient, they must find in favor of Haller on the issue of the oral contract. The jury rendered a verdict that a valid oral contract for the referral of patients did not exist between the parties; that Haller did not commit fraud or misrepresentation; and that Haller did not interfere with Miller's prospective economic advantage or his business and contractual relationship. Judgment was entered April 1, 1994.

Miller filed a motion for judgment NOV or, in the alternative, a new trial, raising juror bias as one ground to support the motion. Miller's motion was denied and an amended judgment awarding Haller their costs and attorney fees was filed May 18, 1994. Miller then served a motion for relief from judgment pursuant to I.R.C.P. 60(b) on Haller's counsel September 9, 1994, along with affidavits of certain of the jurors who had served at the trial. The motion itself, however, was not filed until October 28, 1994.

The district court granted the motion concluding that, based on portions of two juror affidavits, the jury had heard extraneous information that Miller had physically abused a former wife and that this information materially influenced the jury's decision. Haller appeals the district court's order granting Miller's motion for a new trial and, in addition, the district court's interlocutory denial of their motion for a directed verdict.

## II.

### I.R.C.P. 60(b) MOTION FOR RELIEF FROM JUDGMENT

#### A. Timeliness of Motion

Haller initially asserts that the district court was without jurisdiction to grant Miller's motion for relief from judgment because the motion, although timely served, was not filed within the required time frame. A motion for relief from judgment pursuant to Rule 60(b)(6) "shall be *made* within a reasonable time, and ... not more than six (6)

months after the judgment, order, or proceeding was entered or taken." I.R.C.P. 60(b) (emphasis added). Although the time when some actions must be taken can often be enlarged by the district court *sua sponte,* the time requirement set forth in Rule 60(b) is jurisdictional and may not be extended "except to the extent and under the conditions stated" in the Rule itself. I.R.C.P. 6(b).

Rule 60(b) explicitly provides that a motion must be "made" within six months of the entry of judgment but does not set forth how a motion is, in fact, "made" in order to satisfy the time requirements of the statute. In this case, Miller's motion was served September 9, 1994, within six months of the entry of judgment, which occurred April 1. Miller failed to file the motion with the court, however, until October 28, 1994. Haller insists that "made" is synonymous with "filed," citing our opinion in *Gordon v. Gordon,* 118 Idaho 804, 800 P.2d 1018 (1990), where we stated that "[a] party seeking relief from a final judgment under the provisions of I.R.C.P. 60(b) must file a motion within six months after entry of the judgment." *Id.* at 806, 800 P.2d at 1020. We were not faced in *Gordon,* however, with the situation presented here in which the motion was served within the applicable time period but filed after the six months had expired. A more reasonable interpretation of the Rule, which still is consistent with our statement in *Gordon,* is that "made" as used in Rule 60(b) contemplates either filing or service, such that a motion is timely "made" if it either is filed prior to the six month time limit or is served within that time period and then filed "within a reasonable time thereafter." I.R.C.P. 5(d)(1). Miller's motion, thus, was timely "made" because it was served within six months of the entry of judgment and then filed approximately forty-five days later.

#### B. Standard of Review

An aggrieved party may obtain relief from a final judgment by making a motion to the trial court under I.R.C.P. 60(b). Such a motion should not be used, however, as a substitute for a timely appeal. *Johnston v. Pascoe,* 100 Idaho 414, 420, 599 P.2d 985, 991

(1979) (citations omitted). For that reason, although the court is vested with broad discretion in determining whether to grant or deny a Rule 60(b) motion, its discretion is limited and may be granted only on a showing of "unique and compelling circumstances" justifying relief. *Matter of Estate of Bagley*, 117 Idaho 1091, 1093, 793 P.2d 1263, 1265 (Ct.App.1990) (citing *Puphal v. Puphal*, 105 Idaho 302, 669 P.2d 191 (1983)).

In evaluating whether the trial court has abused its discretion on any issue, an appellate court must determine (1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the outer boundaries of its discretion and consistent with any applicable legal standards; and (3) whether the trial court reached its decision by an exercise of reason. *Sun Valley Shopping Ctr. v. Idaho Power*, 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991) (citing *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989)). Absent a manifest abuse of discretion, the trial court's order granting relief from judgment must be upheld. *Johnston*, 100 Idaho at 420, 599 P.2d at 991.

Haller contends on appeal that Miller's motion for relief from judgment was granted erroneously because Miller failed to demonstrate "unique and compelling circumstances" justifying such extraordinary relief. In its memorandum opinion, the district court concluded that evidence of juror misconduct, if otherwise admissible, could be the basis for relief from judgment under Rule 60(b)(6), even though it was not presented to the court until after the 14–day time limitation imposed by Rule 59. The court then articulated the test it would apply to make that determination as whether "the evidence was unknown to movant and no lack of diligence has been raised or shown in bringing the matters to light." The district court then reviewed the facts and noted that the evidence of juror misconduct was revealed well after a Rule 59 motion could have been brought and that Miller's counsel acted diligently in making the Rule 60(b) motion based on the alleged misconduct. Based on this analysis, the court proceeded to determine the admissibility of the affidavits of

juror misconduct. The district court did not apply the "unique and compelling" standard in determining whether the circumstances justified considering the Rule 60(b) motion. Failure to apply the correct legal standard in evaluating Miller's motion amounts to a clear abuse of the district court's discretion. *See Sun Valley Shopping Ctr.*, 119 Idaho at 94, 803 P.2d at 1000. We, thus, are compelled to remand this case to allow the district court to determine whether unique and compelling circumstances exist to warrant the district court's consideration of Miller's motion.

### C. Admissibility of Juror Affidavits

In its consideration of Miller's Rule 60(b) motion, the district court ruled that portions of two juror affidavits presented by Miller to support his motion were admissible. Idaho Rule of Evidence 606 provides, in pertinent part:

> (b) Inquiry to validity of verdict or indictment. Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon the juror's or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes, but a juror may testify on the questions whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror and may be questioned about or may execute an affidavit on the issue of whether or not the jury determined any issue by resort to chance.

The district court essentially relied on a single sentence taken from each of the two juror affidavits in granting Miller's motion for relief from judgment. These sentences concerned statements made to the two jurors by another juror, whose husband was a Shoshone County deputy sheriff. The district

court concluded that the statements made by the deputy sheriff "that plaintiff had beat up his ex-wife to the extent that she had to be hospitalized," which were disclosed to the jury through the deputy sheriff's wife, were both extraneous and "obviously prejudicial" and were improperly brought to the jury's attention.

Evidence offered to impeach a jury verdict must be information that the court determines is both extraneous and prejudicial. I.R.E. 606(b). While we previously have not had an opportunity to define these terms within the context of this Rule, we apply the same standards of construction as are utilized with statutes. We begin with an examination of the literal words of the rule and give the language its plain, obvious and rational meaning. *Grand Canyon Dories v. Idaho State Tax Commission*, 124 Idaho 1, 5, 855 P.2d 462, 466 (1993).

First, in considering whether the information is "extraneous," we begin by noting that we expect jurors to bring with them to jury service their background, knowledge and experience. Thus, that kind of information should not be considered extraneous. A specific fact brought to a juror's attention outside of the trial itself, however, should be regarded as extraneous information that must be evaluated further to determine its admissibility. *See e.g.* Wright & Gold, Federal Practice and Procedure: Evidence § 6075 (1990). The portions of the affidavits found to be admissible by the district court in this case clearly were specific facts involving the parties to this action and were brought to the jurors outside of the trial. The inquiry is not whether the jurors might have heard the information in trial, as well. It is only the purported extraneous information that we examine to determine if it, indeed, is extraneous, i.e. heard outside of trial, irrespective of whether that same information also might have been heard at trial. Here, the statements were properly termed extraneous. That, however, does not end the inquiry, because, before ruling on the extraneous information's admissibility, the district court must determine whether the extraneous information also was prejudicial. I.R.E. 606(b).

The standard in determining whether juror testimony involving the introduction of extraneous information can be admitted to impeach the validity of a verdict is "whether prejudice reasonably could have occurred" by the introduction of the information. *Roll v. City of Middleton*, 115 Idaho 833, 837, 771 P.2d 54, 58 (Ct.App.1989). The proper inquiry is whether there is a reasonable possibility that the presence of the extraneous information affected the verdict and, thus, led to a different result than would have occurred at trial. *See* Wright & Gold, *supra*, § 6075.

Haller argues that the jurors' statements were not prejudicial because they added nothing to the evidence properly presented during the trial. Haller refers specifically to statements made by several witnesses that Miller had battered his wife and that his wife's parents had a restraining order placed on him at one time. In evaluating the admissibility of the juror affidavits, however, the district court did not take into account the trial testimony regarding Miller's conduct. The court, instead, noted in its memorandum opinion that it could not recall any evidence involving Miller's "wife beating" coming out during the trial and ruled that the jurors' statements were admissible.

Although the introduction of the deputy sheriff's statements clearly exposed the jury to allegations about Miller's violent tendencies, it is equally clear that the district court failed to take into account the evidence properly presented at trial that already had demonstrated Miller's intemperance to the jury prior to the time the deputy sheriff's observations were revealed. The trial testimony involving Miller beating his wife and the restraining order that had been placed on him should have been considered by the district court in determining whether the deputy sheriff's statements, although certainly extraneous, were prejudicial, as well. Although the statement that Miller's wife had once been hospitalized is more egregious than the testimony presented at trial, the district court's failure to recall and examine the record evidence to determine whether presentation of the extraneous information reasonably

might have resulted in a different result was an abuse of the district court's discretion.

██ When the discretion exercised by a trial court is affected by an error of law, the role of the appellate court is to note the error made and remand the case for appropriate findings. *Brazier v. Brazier*, 111 Idaho 692, 700, 726 P.2d 1143, 1151 (Ct.App.1986), *overruled on other grounds by Swope v. Swope*, 112 Idaho 974, 739 P.2d 273 (1987). Accordingly, we remand this case to the district court for a determination as to whether "unique and compelling circumstances" exist that justify consideration of Miller's motion and, if so, whether the juror affidavits were properly admissible to evaluate the motion's merits.

## III.

## ILLEGALITY OF ORAL CONTRACT

Haller also appeals the district court's denial of their motion for a directed verdict brought at the close of Miller's case and argues that the alleged oral agreement to refer patients is unenforceable.

██ Miller initially argues that review of the district court's denial of Haller's motion for a directed verdict is premature and somehow improper in that it usurps the function of the trial court. A notice of appeal from an order granting a motion for a new trial under I.A.R. 11(a)(5) is deemed also to include all interlocutory orders entered prior to the order appealed from. I.A.R. 17(e)(1)(A). Haller's motion for a directed verdict was brought at the close of Miller's case. The motion was denied, and the trial continued on the matter to its completion. The denial of Haller's motion for a directed verdict, thus, is an interlocutory order, the appeal of which is proper at this time under I.A.R. 17.

██ Haller argues here that the alleged "referral agreement" is illegal and void as against public policy. The general rule is that a contract prohibited by law is illegal and hence unenforceable. *Williams v. Continental Life & Accident Co.*, 100 Idaho 71, 73, 593 P.2d 708, 710 (1979). This same rule applies equally to contracts that are violative of public policy. *Smith v. Idaho St. Univ.*

*Fed. Credit Union*, 114 Idaho 680, 684, 760 P.2d 19, 23 (1988) (citing *Quintana v. Anthony*, 109 Idaho 977, 981, 712 P.2d 678, 682 (Ct.App.1985)). The question in this case is whether an oral agreement whereby one physician agrees to refer patients to another physician in exchange for an agreement by the latter physician to leave an existing partnership with the former physician is either illegal or against public policy, as a matter of law.

██ The practice of medicine is a privilege granted by the state of Idaho, which retains the authority to license and regulate physicians practicing in this state in order to assure the public health of the citizenry. I.C. § 54–1802. Pursuant to that authority, the Idaho Code provides the state board of medicine with specific grounds for disciplining a licensed physician, which includes:

> (8) Division of fees or gifts or agreement to split or divide fees or gifts received for professional services with any person, institution or corporation in exchange for referral.

I.C. § 54–1814.

██ In addition, the federal government has made the giving or receiving of any remuneration, directly or indirectly, in exchange for referrals involving Medicare patients a felony. 42 U.S.C. § 1320a–7b(b). Federal courts have interpreted this statute broadly and have held that, even if only one purpose of a payment is to induce future referrals, the statute has been violated. *United States v. Greber*, 760 F.2d 68, 69 (3d Cir.1985) (referring to previous version of this statute); *accord United States v. Kats*, 871 F.2d 105, 108 (9th Cir.1989).

As a result of these and similar state statutes, courts have voided contracts between health care professionals in which some form of consideration is given in exchange for referrals. *Polk County, Texas v. Peters*, 800 F.Supp. 1451 (E.D.Tex.1992); *Beck v. American Health Group Int'l, Inc.*, 211 Cal.App.3d 1555, 260 Cal.Rptr. 237 (Ct.App.1989); *Mason v. Hosta*, 152 Cal.App.3d 980, 199 Cal. Rptr. 859 (Ct.App.1984). As the court in *Beck* noted, the evil to be avoided in such agreements is " 'any relationship where the

referral may be induced by considerations other than the best interests of the patient.'" *Beck,* 260 Cal.Rptr. at 243 (quoting 63 Ops. Cal. Atty. Gen. 89, 92 (1980)).

■ In this case, however, the alleged oral contract contemplates no division or agreement to divide fees or gifts nor is there a giving or receiving of any remuneration in exchange for referrals. The oral contract that Haller allegedly entered into with Miller merely provided that, if Miller voluntarily left the Silverton Partnership, surgical referrals to Miller would continue to be made by Haller "in the same pattern as such referrals had been made" previously. This is not the form of consideration strictly proscribed by the statutes, and, for that reason, the oral contract alleged here cannot be termed illegal, as a matter of law.

■ Similarly, although the alleged oral contract might require that Haller refer patients to Miller on a basis that might conflict with the best interests of the patients, resolution of that issue is clearly a question of fact for the jury. The district court correctly concluded the same in denying Haller's motion for a directed verdict and including a jury instruction on the issue. This instruction provided that, if the jury found that an agreement existed that required Haller to refer patients to Miller on a basis that conflicted with the best interests of the patient, the jury must find in favor of Haller. The jury, in fact, did find in favor of Haller, finding that no "valid oral contract" existed between the parties for the referral of patients. We affirm the district court's decision to leave this determination to the jury in denying Haller's motion for a directed verdict on this issue.

## IV.

### CONCLUSION

For the reasons given, we vacate the district court's order granting Miller's motion for a new trial pursuant to I.R.C.P. 60(b) and remand the case to the district court for reconsideration of this motion under the standards discussed herein. We affirm the district court's interlocutory order denying Haller's motion for a directed verdict on the enforceability of the oral contract alleged to exist between the parties to this action.

McDEVITT, C.J. and JOHNSON, J., concur.

SILAK, Justice, dissenting from Part III, and SCHROEDER, J., joins in dissent.

I respectfully dissent from Part III of the Court's opinion. The alleged oral contract to refer patients from Haller to Miller violates both federal and state law and is unenforceable. Therefore, the district court should be instructed on remand to grant Haller's motion for a directed verdict on this issue, in the event that the district court does not set aside its order granting a new trial.

The evidence shows that Miller agreed to voluntarily withdraw from the partnership. The written "Agreement for Voluntary Withdrawal of Partner" provided that in consideration of Miller's agreement to withdraw, the remaining partners would forgive repayment of a loan and a promissory note, and waive enforcement of the noncompetition clause in the Partnership Agreement. Miller also claimed that an oral agreement provided that if he voluntarily withdrew from the partnership Haller would continue to refer surgical patients to Miller in the same pattern that had existed when Miller was in the partnership. In his testimony, Miller described this referral agreement as "the final determination of my value of the partnership." Miller's estimate of the value of surgical referrals which should have been made to him by Haller in 1989 and 1990 was in excess of $200,000.

This oral agreement violated 42 U.S.C. § 1320a–7b(b), which makes the giving or receiving of remuneration, directly or indirectly, in exchange for referrals involving Medicare patients a felony. The Third Circuit Court of Appeals has stated that "[i]f one purpose of the payment was to induce future referrals, the Medicare statute has been violated." *United States v. Greber,* 760 F.2d 68, 69 (3rd Cir.1985). Here, the remuneration might be indirect, but it is remuneration nonetheless: Miller accepted a referral agreement, and other terms, in exchange for his voluntary termination of his partnership

interest. Haller received the benefit of Miller's voluntary withdrawal from the partnership in exchange for a continuing flow of referrals and other consideration. Because the referrals would have been made to satisfy the oral agreement, they would have been made in violation of the Medicare/Medicaid Anti–Fraud and Abuse statute, 42 U.S.C. § 1320a–7b(b).

The potential violation of the federal statute would also have constituted a violation of state law. The grounds for medical discipline set forth in I.C. § 54–1814 include: "(21) Commission of any act constituting a felony ..." Violation of the Medicare/Medicaid Anti–Fraud and Abuse statutes would constitute a felony and accordingly would have been prohibited under Idaho law.

Based upon the federal and state law cited above, and the clear public policy prohibiting financial influence upon the referral of Medicare patients, I would hold that the alleged oral contract which provided for Miller to receive referrals in exchange for his voluntary withdrawal from the partnership violated applicable state and federal law and public policy. The district court therefore should have granted Haller's motion for a directed verdict because the oral contract was illegal.