979 P.2d 1230

STATE of Idaho, Plaintiff–Respondent,

v.

Tomas Gaspar TREJO, Defendant–Appellant.

No. 24455.

Court of Appeals of Idaho.

June 16, 1999.

---

1. *Frye v. United States,* 293 F. 1013 (D.C.Cir. 1923).

Manweiler, Wilcox, Trout & Manweiler, P.L.L.C., Boise, for appellant.

Hon. Alan G. Lance, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

SCHWARTZMAN, Judge.

Tomas Gasper Trejo appeals from his conviction for aggravated battery, I.C. §§ 18–903(c) and 18–907(b), a felony, along with a sentence enhancement for possession of a firearm during the commission of a crime, I.C. § 19–2520. He also appeals from the district court's order denying his I.C.R. 35 motion for a reduction of sentence.

## I.

### FACTS AND PROCEDURE

In the spring of 1997, Trejo and Cecilia Aguirre, husband and wife, were involved in a severely deteriorating relationship and a divorce was pending. Because the two were unable to agree upon a child-visitation schedule, a court order was issued stating that:

> Tomas G. Trejo, have temporary periods of custody of the minor children of the parties, . . . as follows:
>
> 1. Alternating weekends from 7:00 p.m. Friday until 7:00 p.m. Sunday commencing April 18, 1997;
>
> 2. One three hour period each week on either Tuesday, Wednesday, or Thursday;

The parties shall exchange the children at the McDonald's located at 148 Caldwell Blvd. Nampa, Idaho.

. . . .

The Plaintiff and Defendant shall have no contact with one another except for the exchange of the children, mediation and through legal proceedings.

On Sunday May 4, 1997, Cecilia and her sister, Mary Aguirre, visited a local tavern and consumed alcoholic beverages. Cecilia found Trejo also visiting the tavern and was disturbed because he was not with the children, over whom he had custody that weekend. A verbal altercation eventually erupted and Mary asked her brother Pete to either "do something or say something" to Trejo. Pete confirmed that Trejo had not resorted to violence and declined to get involved.

Later that afternoon, while at a second tavern, Cecilia and Mary rendezvoused with John Guardiola, Mary's boyfriend. After drinking more alcohol, and in spite of the court order to the contrary, Cecilia decided to drive to Trejo's home, accompanied by Mary and Guardiola. At trial, Cecilia stated that her intention was to tell the children to go home early because Trejo was not spending time with them.

As Cecilia's car approached Trejo's house, Mary asked Guardiola to lay down in the back seat. When they arrived a friend of Trejo's exited the house and indicated that Trejo was not home. As Cecilia and Mary spoke to the friend, Trejo arrived with his girlfriend. Mary approached Trejo and the two became engaged in another verbal dispute. At Mary's request, Guardiola, who was still hiding in the car, emerged and a physical altercation began between Trejo and Guardiola. The two eventually separated, with Trejo going inside the house and Cecilia, Mary and Guardiola getting back inside the car. However, Trejo then came out of the house armed with a 9 mm semi-automatic pistol. Cecilia attempted to start the car and effectuate an escape, but it would not start. Trejo then approached the car and proceeded to shoot Guardiola in the stomach as he lay in the back seat.

Finally able to start the car, Cecilia drove to a local grocery store where she stopped and called 911. The police and an ambulance arrived and Guardiola was transported to the hospital for treatment. Later that evening, officers went to Trejo's house to investigate the shooting, at which time Trejo was arrested. Two days later, on May 6, 1997, a detective attempted to interview Guardiola at the hospital. Although this interview was initially recorded, the officer did not preserve the audio tape because he felt the interview was unproductive. The officer based his opinion on the fact that Guardiola was under the influence of pain medication and appeared groggy.

Trejo was charged with aggravated battery, a felony, I.C. §§ 18–903(c) and 18–907(b), and possession of a firearm during the commission of a crime, a sentence enhancement, I.C. § 19–2520. Following a trial, the jury found Trejo guilty of aggravated battery and found that he had used a firearm in the course of the aggravated battery. The district court then imposed a unified sentence of seven years, with two years fixed. This sentence was suspended and Trejo was placed on probation for a period of seven years. He was also ordered to pay restitution to Guardiola in the amount of $10,692.42. Trejo next filed a motion to reduce his sentence pursuant to I.C.R. 35, which the district court denied.

Trejo now appeals, asserting that the district court made a number of evidentiary errors, failed to properly instruct the jury and abused its discretion when it denied Trejo's Rule 35 motion. We address each of Trejo's assertions of error in turn.

## II.

## THE DISTRICT COURT DID NOT ERR WHEN IT DENIED THE ADMISSION OF EVIDENCE OF GUARDIOLA'S PREVIOUS CRIMINAL CONVICTION

Trejo first asserts that the district court erred when it excluded evidence of Guardiola's prior felony conviction for a crime equivalent to aggravated assault. The district court excluded this evidence by granting the

state's motion in limine which requested that the court limit the defendant from commenting upon or presenting evidence regarding Guardiola's criminal record. The motion further requested that the court:

> hold an in Camera review of the prior record of John Guardiola prior to the Defendant or his counsel commenting on that record. Idaho Criminal Rule 609[1] provides for that type of hearing.
>
> The information that the State possesses on his record indicates that the conviction was for an Aggravated Assault. Pursuant to statute and case law, that conviction does not go to truthfulness or veracity and therefore is not one of the type of prior convictions that can be used to impeach or be commented on at trial. [*State v. Allen,* 113 Idaho 676, 747 P.2d 85 (Ct.App.1987)]. The resulting prejudicial impact would far outweigh its probative nature.

Prior to trial, the district court heard argument on this motion. The state maintained that although Guardiola did have a criminal record, only one conviction had occurred within the previous ten years, a reference to the time limitation contained in I.R.E. 609(b). The state then noted that none of Guardiola's convictions pertained to truthfulness or veracity, a further reference to the credibility issue addressed in I.R.E. 609.

■ The determination of whether evidence of a witness' prior conviction of a crime will be admitted under I.R.E. 609 involves a two-tiered inquiry. The court must first consider whether the previous conviction is relevant to the witness' credibility; and second whether its probative value outweighs its unfair prejudicial effect. *See State v. Bush,* 131 Idaho 22, 30, 951 P.2d 1249, 1257 (1997). In the present case, the district court considered the nature of Guardiola's prior conviction and correctly determined that it was not relevant to his credibility. *See State v. Ybarra* 102 Idaho 573, 580–81, 634 P.2d 435, 442–43 (1981) (noting that crimes of violence have

little or no direct bearing on credibility). Accordingly, the court properly granted the state's motion in limine under Rule 609.

■ Nevertheless, Trejo further argues on appeal that the district court still erred when it denied admission of Guardiola's *conviction* because it was admissible under I.R.E. 404(b).[2] After noting that the conviction did not "go to the question of truth," the court stated that it still wished to consider "the issue of knowledge on the part of the defendant here." Later, when issuing its final ruling on the conviction's inadmissibility, the district court noted that Trejo's knowledge of the conviction was irrelevant, and that the "conviction was outside of the rules." Despite this ruling the court did allow Trejo to testify, without mentioning any specific acts, about his knowledge of Guardiola's *reputation* for being quarrelsome, violent and dangerous. *See* I.R.E. 405(a). The court also instructed the jury that this *reputation* evidence could be used to determine "the reasonableness of [Trejo's] beliefs under the circumstances then apparent to [Trejo]."

Idaho Rule of Evidence 404(b) is a rule of exclusion. It generally prevents the admission of previous acts to establish a person's character for the purpose of showing that the person acted in conformity with that character in a given situation. The rule, however, does not completely eliminate the use of prior or bad acts for all purposes. It goes on to articulate that previous acts can be admitted for other purposes, such as to show "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." At trial, counsel for Trejo asserted that he wished to introduce the conviction for two purposes, namely to question the truth and veracity of the victim, and to show Guardiola's "reputation for quarrelsomeness, violence and dangerousness." Neither of these purposes is articulated in I.R.E. 404(b) as a proper use of evidence of previous acts.[3]

---

**1.** The Idaho Criminal Rules do not contain a rule designated as number 609. However, the emphasis on truth and veracity contained in the motion indicates that it was actually referring to Idaho Rule of Evidence 609.

**2.** Although the conviction's admissibility under I.R.E. 404(b) was not expressly argued, the district court appeared to have considered the issue beyond just I.R.E. 609.

**3.** We were not presented with the potential admissibility of Guardiola's prior conviction pursu-

Thus, Guardiola's prior conviction was not admissible under I.R.E. 404(b) .

## III.

## THE TEMPORARY CUSTODY ORDER WAS ADMITTED AND THE DISTRICT COURT PROPERLY DENIED THE ADMISSION OF THE LETTERS

### A. Standard Of Review

"The trial court has broad discretion in the admission of evidence and its judgment will only be reversed when there has been abuse of that discretion." *State v. Zichko,* 129 Idaho 259, 264, 923 P.2d 966, 971 (1996); *State v. Zimmerman,* 121 Idaho 971, 973–74, 829 P.2d 861, 863–64 (1992). However, questions of relevancy are reviewed de novo. *State v. Raudebaugh,* 124 Idaho 758, 764, 864 P.2d 596, 602 (1993).

### B. Analysis

Trejo asserts that the district court erred when it denied the admission of certain documents into evidence. During the course of trial, Trejo attempted to admit a copy of a temporary custody order which delineated the court-approved child custody arrangements between him and Cecilia. On appeal, Trejo claims that the district court erred when it denied his motion to admit this document into evidence. However, the record establishes that the order on motion for temporary custody *was* admitted into evidence as an exhibit. Accordingly, there is no *adverse* ruling below which forms the basis for this assignment of error, precluding, and rendering unnecessary, any review by this court. *See Fisher* and *Medina, infra.*

■ Trejo also asserts that the district court erred when it refused to admit into evidence two letters which were sent by Trejo's attorney to Cecilia's attorney in order to orchestrate the exchange of children for the court ordered visitation periods. The letters indicate which day of the week Trejo would like to pick up the children, and confirms that custody of the children would be transferred at the local McDonald's. When offered for admission, the state objected to the foundation and relevance of the letters. The district court sustained the state's objection to the relevance of the letters, and denied their admission.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." I.R.E. 401. We fail to see the relevance of these attorney-generated letters to the issues at hand, especially when the matter of visitation protocol had previously been reduced to a formal order. We therefore find that the district court did not err when it denied their admission.

## IV.

## THE DISTRICT COURT'S FINDING THAT CECILIA'S STATEMENTS MADE DURING MEDIATION WERE PRIVILEGED WAS HARMLESS ERROR

■ At trial, Trejo sought to introduce the testimony of a mediator who had worked with Cecilia and Trejo during their divorce and child custody litigation. According to Trejo's offer of proof, the mediator would have testified that during a mediation session held *after* the shooting Cecilia referred to Trejo and stated, "I want to see him six feet under." The state argued that the statement was privileged under I.R.E. 507(2) which states,

> General Rule of Privilege. A client has a privilege in any civil or criminal action to which the client is a party to refuse to disclose and to prevent any other person from disclosing confidential communications made in the furtherance of the rendition of mediation services to the client, among the client, the client's mediator, and persons who are participating in the medi-

---

ant to I.R.E. 404(a)(2) and I.R.E. 405(b). When a victim's character trait is an essential element of a defense, these two rules allow evidence of that pertinent character trait to be admitted by

proof of specific instances of that person's *conduct* over and above general reputation or opinion testimony.

ation under the direction of the mediator, including members of the client's family.

Counsel for Trejo asserted that the privilege did not apply in this criminal proceeding because Cecilia is not a "party" to this criminal action. Following argument, the district court determined that the statement was privileged and allowed the mediator to invoke the privilege on behalf of Cecilia. In doing so the court stated that it was "satisfied that the intent was to make an absolute privilege." Trejo argues that the district court improperly found that the privilege applied in this action.

When interpreting a rule of evidence, Idaho appellate courts apply the same standards of construction as are utilized with statutes. *Miller v. Haller*, 129 Idaho 345, 350, 924 P.2d 607, 612 (1996). "We begin with an examination of the literal words of the rule and give the language its plain, obvious and rational meaning." *Id.* "A statute should be construed so that effect is given to its provisions, and no part is rendered superfluous or insignificant." *Petersen v. Franklin County*, 130 Idaho 176, 181, 938 P.2d 1214, 1219 (1997); *see also Blome v. Truska*, 130 Idaho 669, 673, 946 P.2d 631, 635 (1997)(stating that a basic tenet of statutory construction requires a statute be read so as to give force and effect to every part). Accordingly, rules of evidence should also be construed so that each part is given force and effect.

■ Rule 507 clearly indicates that "a client has a privilege in any civil or criminal action *to which the client is a party.*" (emphasis added). The district court's interpretation of the privilege as "absolute" ignores that portion of the rule which defines the subsequent proceedings in which the privilege can be invoked. Essentially, the court excised an articulated restriction and read the privilege as applicable in any civil or criminal action. However, the plain language of the rule prevents such a broad reading.[4] Giving meaning to the later part of the phrase, we find that the privilege found in I.R.E. 507 cannot be invoked in a subsequent proceeding unless the mediation client

is a *party* to that proceeding. Furthermore, however broadly the definition of a party may be read in other contexts, it certainly does not include a mere witness, such as Cecilia was in this criminal action. Therefore, we find that the district court erred when it determined that the statement made by Cecilia was subject to the mediator privilege contained in I.R.E. 507.

■ Although the district court erred, a review of the record indicates this error was harmless. Idaho Criminal Rule 52 provides: "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." An error will be found to have affected the substantial rights of a defendant if it appears from the record that the error contributed to the verdict, leaving the appellate court with a reasonable doubt that the jury would have reached the same result had the error not occurred. *State v. Hawkins*, 131 Idaho 396, 407, 958 P.2d 22, 33 (Ct.App.1998).

On appeal, Trejo asserts that he should have been allowed to introduce the statement in order to impeach Cecilia's testimony that she was at Trejo's residence to pick up their children pursuant to a visitation order, and to show the "heightened animosity that existed between the parties." However, a review of the record indicates that other evidence of the animosity between the parties was amply presented during the trial. It also fails to support the claimed impeachment value of the statement.

Cecilia never asserted that she was attempting to pick up the children pursuant to a visitation order when the shooting occurred. Rather, she testified that she was at Trejo's house attempting to tell the children to go home prior to the arranged time of 7:00 p.m. Cecilia also admitted that her presence at Trejo's home was a violation of the temporary custody order which prohibited contact between Trejo and Cecilia except under very limited circumstances. The order itself was admitted into evidence and clearly stated that the exchange of children was to take

---

4. This same language of limitation appears in I.R.E. 514(b) (Parent-child; guardian or legal custodian-ward privilege); 516(b) (school counselor-student privilege); and 518(b) (licensed social worker-client privilege).

place at McDonald's. Cecilia's statement that she would like to see Trejo "six feet under," made *after* the shooting incident, did not differ from, nor contradict her testimony as to why she was at Trejo's home that evening. Accordingly, its impeachment value would have been negligible at best.

Evidence of the animosity which existed between the parties involved was presented during the trial. Cecilia testified about the divorce and child custody litigation which was pending at the time. She also informed the jury about a quarrel which had taken place at the tavern on the day of the shooting. Mary testified that she and Trejo had also had disagreements prior to the shooting. Finally, the temporary custody order and its prohibition of contact between Cecilia and Trejo indicated a high level of hostility and animosity.

Accordingly, we find that the district court's error in finding the statement was privileged was harmless. We do not have a reasonable doubt that the jury would have reached the same result had the statement been admitted into evidence. *See State v. Roy,* 127 Idaho 228, 231, 899 P.2d 441, 444 (1995).

### V.

### ANY POTENTIAL ERROR MADE BY THE DISTRICT COURT IN DENYING JURY INSTRUCTIONS ON ADDITIONAL LESSER–INCLUDED OFFENSES WAS CURED UNDER THE ACQUITTAL FIRST DOCTRINE

█ Trejo asserts that the district court erred when it failed to instruct the jury on the lesser included offenses of exhibition or use of a deadly weapon, I.C. § 18–3303, and injuring another by careless handling and discharge of a firearm, I.C. § 18–3312. When an alleged error is the omission of a jury instruction on a lesser included offense, this Court must determine whether the result would have been different had the in-

struction been given. *State v. Miller,* 131 Idaho 288, 293, 955 P.2d 603, 608 (Ct.App. 1997); *State v. Hudson,* 129 Idaho 478, 480, 927 P.2d 451, 453 (Ct.App.1996). If we find beyond a reasonable doubt that the jury would have reached the same result, any alleged error would be regarded as harmless. *Id.*

The record demonstrates that the district court *did* instruct the jury on the lesser included offense of injuring another by discharge of an aimed firearm. *See* I.C. § 18–3306.[5] Because of this, the district court also gave the jury an "acquittal first" instruction as required by I.C. § 19–2132(c). The acquittal first instruction stated in relevant part:

> In order to find the defendant guilty of an included offense, all of you first must find that the defendant is not guilty of the offense charged against him in the Information. Then, and only then, you may consider whether he is guilty of an included offense contained in the offense charged against him. To find him guilty of any included offense, the prosecution must still prove, and all of you must still be satisfied, beyond a reasonable doubt, that the defendant is guilty of that offense.

█ We presume that the jury followed this instruction. *Miller,* 131 Idaho at 294, 955 P.2d at 608. Because the jury unanimously found Trejo guilty of aggravated battery, as was charged in part one of the information, it was foreclosed from considering whether he was guilty of any lesser-included offenses. The result, therefore, could not have been different even if the additional included offense instructions had been given. Accordingly, we find that any potential error in the district court's failure to give the requested instructions on *additional* lesser-included offenses would be harmless.

Trejo further argues that it was error for the district court not to instruct the jury on

---

5. Section 18–3306 of the Idaho Code states in relevant part,

**Injuring another by discharge of aimed firearms.**—Any person who shall maim or injure any other person by the discharge of any firearm pointed or aimed, intentionally but without malice, at any such person, shall be guilty of a misdemeanor....

880

his proposed defense of necessity.[6] However-
er, on appeal Trejo has offered neither argu-
ment nor authority to establish why it was
error. Issues on appeal which are not sup-
ported by propositions of law, authority, or
argument will not be considered. *State v.
Zichko* 129 Idaho 259, 923 P.2d 966 (1996).

## VI.

## THE DISTRICT COURT DID NOT ERR WHEN IT DENIED TREJO'S RULE 35 MOTION FOR A REDUCED SENTENCE

Trejo asserts that the district
court abused its discretion when, in light of
his limited criminal record, it failed to grant
him a withheld judgment. After a person
has been convicted of a crime, a district court
may, in its discretion, withhold judgment.
I.C. § 19–2601(3). "Refusal to grant a with-
held judgment will not be deemed an abuse
of discretion if the trial court has sufficient
information to determine that a withheld
judgment would be inappropriate." *State v.
Geier*, 109 Idaho 963, 965, 712 P.2d 664, 666
(Ct.App.1985).

In his Rule 35 motion to modify his sen-
tence, Trejo noted that trial counsel had
previously failed to request a withheld judg-
ment. He then asked the court to modify his
sentence and withhold judgment. The dis-
trict court refused, stating that a withheld
judgment "would be a flagrant abuse of au-
thority ... in any case in which the defen-
dant consciously shot another person—even
under the circumstances of justifiable anger."
We find that the violent nature of the crime
provided the district court with sufficient in-
formation from which it reasonably deter-
mined that a withheld judgment would be
inappropriate. Accordingly, we find no er-
ror.

## VII.

## THIS COURT IS PRECLUDED FROM ADDRESSING TREJO'S REQUEST FOR A NEW TRIAL

Finally, Trejo asserts that he is enti-
tled to a new trial based upon newly discov-
ered medical records indicating that Guardio-
la was intoxicated during the altercation and
also upon the fact that the tape of the origi-
nal police interview with Guardiola was de-
stroyed by an officer. A trial court "on
motion of a defendant may grant a new trial
to the defendant if required in the interest of
justice." I.C.R. 34. However, on appeal,
Trejo acknowledges that he has not yet re-
quested a new trial in the district court. It
is well settled that, in order for an issue to be
raised on appeal, the record must reveal an
adverse ruling which forms the basis for an
assignment of error. *State v. Fisher*, 123
Idaho 481, 485, 849 P.2d 942, 946 (1993);
*State v. Medina*, 128 Idaho 19, 23, 909 P.2d
637, 641 (Ct.App.1996). Because the district
court has not been presented with this issue
and has not ruled upon it, review by this
Court is precluded. *See Id.*

## VIII.

## CONCLUSION

Trejo's judgment of conviction and the sen-
tence imposed by the district court are af-
firmed.

Chief Judge PERRY and Judge LAN-
SING, CONCUR.

---

6. The district court fully instructed the jury on     the issue of self-defense.