# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 48224

| | | |
|---|---|---|
| **DESIREE LASHAWN HORTON,** | ) | |
| | ) | |
| **Petitioner-Appellant,** | ) | **Lewiston, April 2022 Term** |
| | ) | |
| **v.** | ) | **Opinion Filed: October 3, 2022** |
| | ) | |
| **ANDREW PATRICK HORTON,** | ) | **Melanie Gagnepain, Clerk** |
| | ) | |
| **Respondent-Respondent on Appeal** | ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Richard S. Christensen, District Judge. Timothy Van Valin, Magistrate Judge.

The decision of the district court is <u>affirmed in part and reversed in part</u>.

James, Vernon & Weeks, P.A., Coeur d'Alene, for appellant, Desiree Lashawn Horton. Monica Flood Brennan argued.

Kevin J. Waite, P.C., Coeur d'Alene, for respondent, Andrew Patrick Horton. Kevin J. Waite argued.

———————————

STEGNER, Justice.

This case arises out of a divorce proceeding between Desiree and Andrew Horton.[1] Desiree served Andrew with an Amended Complaint for Divorce in December of 2016. On June 15, 2017, in lieu of a trial, Desiree and Andrew entered into an oral stipulation on the record specifying how their community property would be divided between them. Because Desiree was employed as a teacher in Italy by the United States government and Andrew was a member of the United States military on active duty, the decree of divorce required specific language to be enforceable as to their respective retirement accounts. The magistrate court stated that, due to this specific language, it would "retain jurisdiction" with respect to the parties' retirement accounts.

A written judgment and decree of divorce was entered on February 26, 2018, and dated *nunc pro tunc* to June 15, 2017, the date of the parties' oral stipulation. After later motions and hearings on behalf of both parties, an amended judgment and decree of divorce was entered on

---

[1] The parties will be referred to by their first names for the sake of simplicity and clarity. No disrespect is intended by doing so.

1

October 18, 2018. The later amended judgment and decree did not indicate it was being issued *nunc pro tunc*.

Andrew appealed the decision to enter the amended judgment and decree of divorce to the district court, arguing that the magistrate court had abused its discretion in several ways. After oral argument, the district court agreed and concluded the magistrate court had abused its discretion in three distinct ways: (1) by deciding to remove the *nunc pro tunc* language from the initial judgment entered on February 26, 2018; (2) by requiring Andrew to obtain "Survivor Benefit Coverage" for Desiree; and (3) by excluding, over Andrew's objection, language related to Desiree's Federal Employee Retirement System account. The district court ordered that the amended judgment and decree of divorce entered on October 18, 2018, be vacated and the case remanded to the magistrate court for various findings of fact and conclusions of law. Desiree timely appealed to this Court. For the reasons discussed below, we affirm in part and reverse in part the decision of the district court.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Desiree and Andrew Horton were married in Idaho on August 19, 1998. Andrew was in the United States military, stationed mostly in Europe. Desiree was a teacher, working for the United States government in Italy. The couple had no children together but became co-guardians of Desiree's two granddaughters.

Approximately eighteen years after they were married, in September 2016, Desiree filed a complaint for divorce in Idaho's First Judicial District on the grounds that there were irreconcilable differences between the couple. In December 2016, Desiree filed an amended complaint for divorce. Andrew filed a response in February 2017, contesting the division of community property and incurred debts set out in Desiree's amended complaint.

In March 2017, Desiree filed a motion for an order of mediation, stating that "the [p]arties [we]re not very far apart regarding property issues[.]" Mediation was ordered, and the mediation took place in May 2017 with Desiree's proposed mediator, Martha Roletto. Believing the parties had reached an agreement through mediation, Roletto prepared a draft decree of divorce the parties could sign as a stipulation. Andrew signed the proposed stipulated decree on May 3, 2017; however, Desiree never signed it.

The parties continued to negotiate and, on June 15, 2017, entered into an oral stipulation (the "Stipulation") before the magistrate court, which was read into the record by Andrew's counsel. The Stipulation provided in pertinent part:

> Judgment is entered as follows: . . . The parties are divorced on the grounds of irreconcilable differences.
>
> . . .
>
> 3. The military pension plan in Andrew's name shall be awarded as follows:
>
> > A. All funds earned up to the date of marriage, August 19, 1998, shall be awarded to Andrew; and
> >
> > B. All funds earned from August 19, 1998, until the date of the entry of this judgment and decree re: divorce shall be equal – shall be equally divided between the parties, since this portion represents the community property portion of the earnings.
>
> 4. The FERS account in Desiree's name – and I believe FERS stands for Federal Employment Retirement System – shall be awarded as follows:
>
> > A. All funds earned up to the date of the marriage, August 19, 1998, shall be awarded to Desiree; and
> >
> > B. All funds earned from August 19, 1998, until the date of the entry of this judgment and decree re: divorce shall be divided – shall be equally divided between the parties, since this portion represents the community property portion of the earnings.

Counsel for Desiree then stated, "I think we need to add a clause right there where it says the [c]ourt will retain jurisdiction over this matter . . . [a]nd make any modifications necessary, so that the parties are awarded what they were intended to be awarded with regards to the retirement accounts." The magistrate court clarified, "[c]ourt will retain jurisdiction over this matter for the purposes of the retirement and military accounts." Because Desiree, who was attending the hearing via Skype, was having trouble hearing, the magistrate court reiterated, "[T]he [c]ourt is retaining jurisdiction over the issue as to the retirements and whatever other type accounts there are that are going to be divided by [Peter] Svennungsen[,]" an attorney enlisted to help with the specific language needed with regard to the retirement accounts.

The magistrate court then asked both Desiree and Andrew, "do you agree with the decree of divorce as it was read into the record?" Both Desiree and Andrew answered in the affirmative. The magistrate court stated, "All right. That will be the order of the [c]ourt." Counsel for Andrew volunteered to draft the decree for the parties to sign and the magistrate court to enter.

On June 27, 2017, before a written decree of divorce had been entered or any draft decree had been put before the magistrate court, Desiree filed an objection to the entry of the decree and moved to include an order for health insurance into the decree of divorce. Desiree requested that "an additional term" be added to the decree of divorce that ordered Andrew to keep Desiree and her two granddaughters on his health insurance. She also requested, in the alternative, that "the divorce be stayed for a period of one year so that she does not lose health insurance options in the military." A hearing was held on the motion on July 11, 2017. Andrew objected, arguing that both of Desiree's requests were "additional provisions that were not agreed to as part of" the Stipulation. The magistrate court did not rule on Desiree's requests but continued the hearing for thirty days for the parties to provide authority or stipulate to the correct course of action. Desiree moved to continue the hearing, and on October 30, 2017, the magistrate court held another hearing. Again, the magistrate court did not rule on Desiree's requests.

On February 2, 2018, Desiree filed a motion to stay the divorce proceedings until August 2018. The resulting stay would mean that Desiree and Andrew would be married a full twenty years, which would allow Desiree to become a "20/20/20" military spouse, entitling her "to significant military benefits, including pension, health insurance, and other important benefits." Desiree had previously asked Andrew to stay married until the twenty-year mark, but he had refused. Citing *Byrd v. Byrd*, No. 04-11-00700-CV, 2012 WL 4576945 (Tex. App. Oct. 3, 2012), *withdrawn and superseded by* 2012 WL 6013424 (Tex. App. Nov. 30, 2012), Desiree requested that, "in the interest of justice," the magistrate court order the divorce be stayed until after she and Andrew had been married for a full twenty years.

Desiree filed a proposed decree on February 21, 2018. The magistrate court then held a hearing on February 26, 2018. The magistrate court stated that, because "there [wa]sn't any good cause at this particular point" to grant the stay, it was not going to stay the divorce until August 2018, and that the parties were divorced as of June 2017. On February 26, 2018, the magistrate court entered a Judgment and Decree of Divorce (the "Original Decree"), dated *nunc pro tunc* to June 15, 2017. The Original Decree provided in relevant part:

3. The military pension plan, in Andrew's name, shall be awarded as follows:

a. All funds earned up to the date of marriage (August 19, 1998), shall be awarded to Andrew; and

b. All funds earned from August 19, 1998[,] until the date of the entry of this Judgment and Decree Re: Divorce, shall be equally divided between

the parties since this portion represents the community property portion of the earnings.

4. The FERS account, in Desiree's name, shall be awarded as follows: All funds earned until the date of the entry of this Judgment and Decree Re: Divorce shall be equally divided between the parties.

5. The parties shall provide [sic] cooperate in good faith to have a Domestic Relations Order be prepared for both the FERS account and the military retirement pension account as follows:

> a. They shall agreed [sic] upon a preparer by first contacting JAG to see if it can assist them in having these documents prepared. If so, they shall provide all documentation needed for the completion of both documents. They shall equally share in the cost of said preparation.

> b. If JAG is unable to prepare the two Domestic Relations Orders, they shall have Peter Svennungsen, or another agreed upon preparer, prepare them and they shall equally share in his costs. They shall contact Peter Svennungsen at [his listed contact information].

The court shall retain jurisdiction over the two retirement /pension [sic] accounts for the preparation and entry of appropriate Domestic Relations Orders.

Desiree filed a motion to modify the divorce decree, to reconsider, and/or set aside the decree on March 12, 2018. Desiree argued that the language in the Original Decree was not specific enough for Andrew's military retirement account. Desiree further argued that the Original Decree should include the Survivor Benefit Plan ("SBP") benefits earned during the marriage, which would entitle her to 55% of Andrew's base pay if the magistrate court ordered Andrew to elect the coverage and he died before she did. Desiree also asserted that Andrew's accrued leave was community property that had not, but should have, been included in the Original Decree, and that the portion of the FERS account in her name that had accrued prior to marriage was her separate property. Additionally, Desiree requested that the magistrate court reconsider both its decision to enter the Original Decree *nunc pro tunc* and its decision not to stay the divorce until the marriage had lasted a full twenty years so Desiree could receive 20/20/20 health care benefits. On April 2, 2018, Desiree filed an amended motion, adding an alternative request to set aside the Original Decree and "allow for additional limited discovery respecting information not disclosed but necessary to a division of the community assets – specifically, the community military benefits."

A hearing on the motion to modify was held on May 22, 2018. The magistrate court stated that it would remove the *nunc pro tunc* language and would instead date the decree the day it was signed, which was to happen within seven days. Additionally, the magistrate court determined that

the SBP benefits were an "omitted asset" and ordered Andrew to elect the SBP coverage for Desiree. The magistrate court further ordered that if community funds had been expended to "buy back" a portion of the FERS account, as Andrew contended, that portion of the FERS account was to be split equally between the parties.

On June 11, 2018, Desiree filed a proposed decree, to which Andrew objected on the grounds that it did not comport with the magistrate court's May 22, 2018, rulings. Andrew argued that, at the hearing on May 22, 2018, the magistrate court had ordered the amended decree be entered *nunc pro tunc* to February 26, 2018, the date the Original Decree had been entered. Additionally, the magistrate court had ordered Desiree to pay any costs associated with electing the SBP coverage, which was not contained in the proposed decree. Further, the language regarding the FERS account stated: "The FERS account in Desiree's and/or Andrew's name shall be awarded as follow[s]: All funds earned during the marriage shall be equally divided between the parties[,]" which was different from the language in the Original Decree even though "[t]here does not appear to be any reason to have changed this language."

A hearing on the proposed decree and related objection was held on July 23, 2018. The magistrate court stated that Andrew was correct that it had ordered the new decree be entered *nunc pro tunc* to February 26, 2018. Counsel for Andrew also explained that the reason he was seeking to split the entirety of Desiree's FERS account was because "she cashed out her prior-to-the-marriage FERS account" and "then they bought it back during the marriage." The magistrate court instructed the parties to split the entire FERS account, "[i]ncluding, but not limited to, any purchase of cashed out FERS" "funds prior to marriage" "that were paid for by community funds."

On October 1, 2018, Desiree filed a motion for entry of an amended decree and motion to reconsider *nunc pro tunc*. Desiree "assert[ed] there were no FERS funds cashed out and purchased back during the marriage." Desiree also requested that the magistrate court reconsider its decision to make the divorce decree *nunc pro tunc* to February 26, 2018, because the magistrate's July 23, 2018, order to make the decree *nunc pro tunc* was a reversal of the magistrate's May 22, 2018, order that the decree would not be entered *nunc pro tunc*. Desiree further asserted that Andrew had not "demonstrated any prejudice to him by removal of the Nunc Pro Tunc."

On October 16, 2018, the magistrate court held its final hearing. The magistrate court stated that, while it had been a mistake for the court to remove the *nunc pro tunc* language, it would abide by its May 22 ruling and not enter the decree *nunc pro tunc*. Additionally, the magistrate court

decided it would not order the language regarding the cashed out FERS funds be included in the decree. On October 18, 2018, the magistrate court entered an Amended Judgment and Decree of Divorce (the "Amended Decree"). In relevant part, the Amended Decree provided:

3. The military retirement benefits earned by Andrew during the marriage are community property. They should be awarded as follows:

a. The [c]ourt awards the wife as her share of the military pension one-half of the community property portion of the husband's actual retired pay (that is, the portion acquired during the marriage up to the date of entry of the judgment of divorce). Any information necessary to effectuate this division shall be provided by husband as recommended by Mr. Svenningsen [sic].

b. The husband will immediately elect former spouse Survivor Benefit Plan coverage for the wife.

c. The wife shall pay all expenses associated with the Survivor Benefit Plan when they accrue.

4. The FERS account in Desiree's and/or Andrew's name shall be awarded as follows: All funds earned or acquired during the marriage shall be equally divided between the parties.

5. The parties shall cooperate in good faith and provide or release any and all information, documents, and records needed to have a Court Order Acceptable for Processing (COAP) for both the FERS accounts and the [sic] have a Military Pension Division Order (MPDO) prepared for the military pension as follows:

a. They shall agree upon a preparer by first contacting JAG to see if it can assist them in having these documents prepared. If so, they shall provide all documentation needed for the completion of both documents. They shall equally share in the cost of said preparation.

b. If JAG is unable to prepare the two Domestic Relations Orders, COAP and MPDO, they shall have Attorney Peter Svennungsen, or another agreed upon preparer, prepare them and they shall equally share in his costs. They shall contact Peter Svennungsen at [his listed contact information].

c. The [c]ourt shall retain jurisdiction over the retirement benefits referenced herein for the preparation and entry of appropriate Court Order Acceptable for Processing (COAP) and Military Pension Division Order (MPDO).

After entry of the Amended Decree, Andrew appealed to the district court, arguing that the magistrate court had abused its discretion. After oral argument, the district court entered its memorandum decision and order on June 25, 2020. The district court concluded the magistrate court had abused its discretion in three distinct ways: (1) by deciding to remove the *nunc pro tunc* language from the Original Decree; (2) by requiring Andrew to obtain SBP coverage for Desiree; and (3) by including, over Andrew's objection, specific language related to Desiree's FERS

7

account. The district court ordered that the Amended Decree be vacated and the case be remanded "to the magistrate court to make proper findings of fact and conclusions of law" regarding "[t]he date of divorce[,]" "[w]hether the election of [SBP c]overage is an asset of the marital community[,]" and "[w]hether the FERS account is an asset of the marital community, and if so, how it is to be divided." Desiree timely appealed to this Court.

## II.    STANDARD OF REVIEW

> When reviewing the decision of a district court acting in its appellate capacity, this Court does not review the decision of the magistrate court. *Bailey v. Bailey*, 153 Idaho 526, 529, 284 P.3d 970, 973 (2012). Rather, this Court is "procedurally bound to affirm or reverse the decisions of the district court." *Id.* (quoting *State v. Korn*, 148 Idaho 413, 415 n.1, 224 P.3d 480, 482 n.1 (2009)). However, in so doing, this Court reviews the record before the magistrate court "to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings." *Losser v. Bradstreet*, 145 Idaho 670, 672, 183 P.3d 758, 760 (2008) (quoting *Nicholls v. Blaser*, 102 Idaho 559, 561, 633 P.2d 1137, 1139 (1981)). If the magistrate court's findings are supported by substantial and competent evidence "and the conclusions follow therefrom," this Court will affirm the district court's decision affirming the magistrate court "as a matter of procedure." *Id.*

*Bromund v. Bromund*, 167 Idaho 925, 928, 477 P.3d 979, 982 (2020).

Though the parties disagree as to whether the other party provided an appropriate standard of review, both parties agree that this Court should determine whether the district court erred in concluding the magistrate court abused its discretion.

> In order to determine whether a trial court has abused its discretion, this Court must determine whether the trial court: "(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 867, 421 P.3d 187, 198 (2018).

*Papin v. Papin*, 166 Idaho 9, 30–31, 454 P.3d 1092, 1113–14 (2019).

## III.    ANALYSIS

### A.  The Stipulation is a binding divorce settlement.

We must first determine whether the Stipulation is an enforceable divorce settlement agreement. Central to the parties' dispute is whether the Stipulation resolved or should have controlled the later disagreements.

8

In general, divorce settlement agreements must be in writing to be enforceable. I.C. § 32-917 ("All contracts for marriage settlements must be in writing, and executed and acknowledged or proved in like manner as conveyances of land are required to be executed and acknowledged or proved."); *Stevens v. Stevens*, 135 Idaho 224, 227–28, 16 P.3d 900, 903–04 (2000). Oral agreements, even those made in mediation, are not enforceable. *Stevens*, 135 Idaho at 229, 16 P.3d at 905. This Court has previously explained that the writing requirement promotes public policy considerations:

> Public policy favors requiring divorce settlement agreements to be in writing. One of the major purposes for requiring life-changing documents to be written and executed is to impress upon the parties the importance of the legal consequences of the document. For example, prenuptial agreements and wills must be written, signed, executed, and acknowledged. *See* I.C. § 32-922; I.C. § 15-2-502. Dividing the property of a community that may have lasted for decades has consequences at least as important as distributing the assets of the deceased. Indeed, the process of drafting an agreement often shows the parties that they omitted major issues or made hasty assumptions while negotiating. In addition, the requirement of writing and execution substantiates that the parties actually did come to a meeting of the minds in a vitally important area. This case is a perfect example: [the husband] left the [mediation] meeting believing that all issues of the divorce were totally settled. On the other hand, [the wife] left the two-hour meeting viewing the dictated agreement as a working proposal subject to revision after verifying the values of the community's assets and debts and thus confirming that the agreement was fair.

*Id.*

However, there is an exception to the writing requirement when the parties make "oral stipulations in open court in divorce cases." *Id.* "Stipulations taken by oath are of a different character than self-serving testimony by one spouse, contested by the other spouse, that the parties at a former time reached an oral agreement." *Id.* "Courts accept stipulations as evidence when they are satisfied that the parties currently understand and acknowledge the agreement." *Id.*

Here, counsel for both Desiree and Andrew read the Stipulation into the record at the hearing before the magistrate court on June 15, 2017. The following exchange then occurred:

THE COURT: Ms. Horton, I know that it's been difficult for you to –

MS. HORTON: Yes.

THE COURT: – understand and – and hear everything. However, I think there's been a lot of discussion here.

Do you believe that you – do you agree with the decree of divorce as it was read into the record?

MS. HORTON: Yes.

9

> THE COURT: All right. Mr. Horton, do you agree with the decree of divorce as it was read into the record?
>
> MR. HORTON: I do.
>
> THE COURT: Any questions at all from you, Ms. Flood-Brennan?
>
> MS. FLOOD-BRENNAN: No, I think that we have – both parties have acted in good faith and – and got this resolved.
>
> THE COURT: Mr. Waite?
>
> MR. WAITE: No questions or further comments, your Honor.
>
> THE COURT: All right. That will be the order of the Court.

The Stipulation was read into the record in open court and both parties expressly stated they agreed to the Stipulation. Importantly, however, neither party was under oath at the time.

Ordinarily, this would be the end of our inquiry: the failure of the parties to be under oath during the oral stipulation would require us to conclude the oral stipulation was not binding upon the parties. However, neither party has made such a challenge to the Stipulation on appeal. Instead, the parties simply argue that the Stipulation supports their respective positions. Because the parties have failed to challenge the Stipulation on appeal, we necessarily conclude that the Stipulation is the parties' binding settlement agreement. We do caution the bar and the bench that the best practice moving forward is to require these stipulations to be under oath.

We further conclude that, if the Stipulation is at odds with conventional community property law, the Stipulation controls. Idaho Code section 32-916 provides: "The property rights of husband and wife are governed by [Idaho Code title 32, chapter 9], *unless* there is a marriage settlement agreement entered into during marriage containing stipulations contrary thereto." I.C. § 32-916 (italics added). Thus, if the Stipulation resolved the later disagreements between parties, the Stipulation—and not community property law—controls.

### B. The district court did not err in concluding the magistrate court abused its discretion in removing the *nunc pro tunc* clause.

The Original Decree was entered on February 26, 2018, and included language that it was effective *nunc pro tunc* to June 15, 2017, the date the parties entered into the Stipulation. At the hearing on Desiree's motion for reconsideration on May 22, 2018, Desiree sought removal of the *nunc pro tunc* language for two reasons. First, she requested that the entire divorce be stayed until August 2018 so she would be entitled to free military healthcare benefits for life as a "20/20/20" spouse. Second, because her free one-year of military healthcare benefits she received as a

"20/20/15" spouse began to run on the effective date of the divorce, she requested that the magistrate court at least remove the *nunc pro tunc* language to give her additional time to find new healthcare coverage. The magistrate court agreed to remove the *nunc pro tunc* language but did not agree to stay the divorce until the twenty-year mark. At the hearing on October 16, 2018, the magistrate court stated that, while it had been a mistake to remove the *nunc pro tunc* language, the magistrate court would abide by its May 22 ruling.

Acting in its appellate capacity, the district court concluded that the magistrate court had abused its discretion when it decided to remove the *nunc pro tunc* language present in the Original Decree. The district court concluded that the magistrate court did not recognize the issue as within its discretion, nor did it reach its decision by an exercise of reason.

On appeal, Desiree argues that, due to the potential loss of her military health care coverage, she would have been subjected to "manifest injustice" if the *nunc pro tunc* language had remained, and that Andrew failed to show he would have been prejudiced by the removal of the *nunc pro tunc* language. Pointing to *Byrd v. Byrd*, No. 04-11-00700-CV, 2012 WL 4576945 (Tex. App. Oct. 3, 2012), *withdrawn and superseded by* 2012 WL 6013424 (Tex. App. Nov. 30, 2012), Desiree asserts the magistrate court had the authority to remove the *nunc pro tunc* language and stay the divorce proceedings until the marriage had lasted a full twenty years.

Andrew responds that the parties' Stipulation on June 15, 2017, provided the magistrate court with the factual basis to enter the Original Decree on February 26, 2018, *nunc pro tunc* to June 15, 2017. Andrew argues that, even if the magistrate court had the authority to remove the *nunc pro tunc* verbiage to allow Desiree to retain military health care benefits, the record is devoid of the magistrate court's reasoning and "there is no indication that the [m]agistrate [court] recognized the issue as one within [its] discretion[.]" Andrew notes that even the magistrate court, at the hearing on October 16, 2018, believed it had been a mistake to remove the *nunc pro tunc* verbiage.

"*Nunc pro tunc* literally means 'now for then.' . . . In the present context, the phrase indicates that a judgment should be given retroactive effect to a designated date." *Smith v. Glenns Ferry Highway Dist.*, 166 Idaho 683, 700–01, 462 P.3d 1147, 1164–65 (2020) (quoting *Westmont Tractor Co. v. Estate of Westfall*, 112 Idaho 712, 714, 735 P.2d 1023, 1025 (1987)) (ellipsis in original). "A judgment or order can be entered *nunc pro tunc* only to correct what the court

intended to do, but failed to do as a result of the court's accident, excusable oversight, or mistake." *Taylor v. Chamberlain*, 154 Idaho 695, 700, 302 P.3d 35, 40 (2013).

Notably, neither party challenges the magistrate court's decision to *enter* the Original Decree *nunc pro tunc* to the date of the Stipulation; rather, the issue before this Court is the *removal* of the *nunc pro tunc* language. There does not appear to be any case law in Idaho regarding the removal of *nunc pro tunc* language from a judgment. However, before the magistrate court, Desiree argued that Idaho Rule of Family Law Procedure 809[2] allowed the magistrate court to remove the *nunc pro tunc* language "[b]ecause justice require[d] it." *See* I.R.F.L.P. 809(b)(6) (2012) ("On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . any other reason that justifies relief."). This Court recently discussed the interpretation of Rule 809:

> There is little case law discussing Idaho Rule of Family Law Procedure 809. However, this rule is patterned after Idaho Rule of Civil Procedure 60(b), and the two rules are substantially the same with only minor differences in language. Therefore, cases interpreting Rule 60(b) are applicable to interpreting its family law counterpart. The standards for reviewing decisions under Rule 60(b) are well-established. "The decision to grant or deny a motion under I.R.C.P. 60(b) is committed to the discretion of the trial court." *Eby v. State*, 148 Idaho 731, 734, 228 P.3d 998, 1001 (2010), citing *Pullin v. City of Kimberly*, 100 Idaho 34, 36, 592 P.2d 849, 851 (1979).
>
> . . .
>
> It should be noted, however, that before applying its discretion, "a determination under Rule 60(b) turns largely on questions of fact to be determined by the trial court. Those factual findings will be upheld unless they are clearly erroneous." *Eby*, 148 Idaho at 734, 228 P.3d at 1001, quoting *Waller v. State, Dep't of Health and Welfare*, 146 Idaho 234, 237–38, 192 P.3d 1058, 1061–62 (2008). "If the trial court applies the facts in a logical manner to the criteria set forth in Rule 60(b), while keeping in mind the policy favoring relief in doubtful cases, the court will be deemed to have acted within its discretion." *Id.*

*Robirds v. Robirds*, 169 Idaho 596, 604, 499 P.3d 431, 439 (2021) (footnote omitted). "[A]lthough the court is vested with broad discretion in determining whether to grant or deny a Rule 60(b) motion, its discretion is limited and may be granted only on a showing of 'unique and compelling circumstances' justifying relief." *Miller v. Haller*, 129 Idaho 345, 349, 924 P.2d 607, 611 (1996) (quoting *Matter of Estate of Bagley*, 117 Idaho 1091, 1093, 793 P.2d 1263, 1265 (Ct. App. 1990)).

---

[2] Rule 809, as it existed in 2017 and 2018, has since been renumbered and is now located in Rule 805. I.R.F.L.P. 805.

We conclude that the district court correctly determined that the magistrate court did not reach its decision by an exercise of reason. It is unclear why the magistrate court decided to remove the *nunc pro tunc* language. At several points during the May 22, 2018, hearing, the magistrate court stated that it did not "have a problem with removing the nunc pro tunc language" and further commented "I think it's an equitable solution to a very difficult problem." The magistrate court concluded, "[a]ll right. The [c]ourt is – I will set aside the nunc pro tunc [language]." The magistrate court then asked whether Desiree would "still ha[ve] the same problem" if the magistrate court made the new decree *nunc pro tunc* to February 26, 2018, the date the Original Decree was signed and entered. Counsel for Desiree responded, "Well, she has less of a problem if you're going to go with the February [date], but we – we would simply ask that we go with the date – we – we will get that decree in to you this week." The magistrate court then decided, "[I]t'll be my order upon the signature. And I require that that be on my desk within a week, within seven days of today's date. Seven business days." The magistrate court did not provide any other reasoning as to why it chose to remove the *nunc pro tunc* language.

Failing to provide reasoning on the record does not automatically call for reversal. *Robirds*, 169 Idaho at 606, 499 P.3d at 441. "[T]his Court has held that while trial courts are typically required to disclose their reasons for discretionary decisions that directly affect the outcome of litigation, a [trial] court need not disclose reasoning when those reasons are obvious from the record itself." *Id.* (internal quotations omitted; second bracketed alteration in original). It could be inferred that the magistrate court was persuaded by Desiree's potential loss of SBP coverage, which was required to be elected within one year of the date of divorce. Alternatively, it could be inferred that the magistrate court was persuaded that Desiree's potential loss of the 20/20/15 healthcare benefits justified the removal of the *nunc pro tunc* language.[3]

However, at the hearing on October 16, 2018, the magistrate court again discussed the removal of the *nunc pro tunc* language:

> You talked me into taking out the nunc pro tunc. *It was against my better judgment, but I was trying to get the thing resolved* at the – in July of this year. And here we are, August – or October. Still don't got [sic] it.

---

[3] It is unclear how Desiree would have qualified as a 20/20/15 spouse but would not have qualified as a 20/20/20 spouse. A spouse acquires 20/20/15 status when there has been twenty years of military service, twenty years of marriage, and fifteen of those years overlap. Conversely, a spouse acquires 20/20/20 status when there has been twenty years of military service, twenty years of marriage, and twenty of those years overlap. Thus, Desiree likely would not have qualified as *either* a 20/20/15 or a 20/20/20 spouse if the decree were entered prior to August 2018, the twenty-year mark of the couple's marriage.

I entered the final judgment and decree in February with a nunc pro tunc on it. I withdrew that nunc pro tunc in July. I see now that that was a mistake. But I'm – my word is my word. I'm going to enter – the divorce should have been done – should be June of last year. That's what the divorce should be. But because of delays, this has languished.

. . .

I will enter the decree. I will sign it today the way it is. The fact that because of this unreasonable delay in this case that Ms. Horton got what the [c]ourt did not intend is of concern.

. . .

I said that I would – *in an effort to get the case resolved I withdrew the nunc pro tunc* and I'm not going to go against that. I should have left the divorce as it was, but I didn't.

(Italics added.) Thus, based on the magistrate court's soliloquy at the October 16 hearing, it appears that the reason the magistrate court agreed to remove the *nunc pro tunc* language was to expedite the divorce proceedings. At the very least, the reasoning put forth on the record at the October 16 hearing cuts against the inference from the May 22, 2018, hearing that the magistrate court was persuaded that Desiree's loss of either SBP coverage or the 20/20/15 healthcare benefits justified the removal of the *nunc pro tunc* language.

Because the reasons for the removal of the *nunc pro tunc* language are not obvious from the record itself, the magistrate court should have expressly disclosed its reasoning. *See Robirds*, 169 Idaho at 606, 499 P.3d at 441. The failure to do so is grounds for reversal because a Rule 809 motion should only be granted "on a showing of 'unique and compelling circumstances' justifying relief." *Miller*, 129 Idaho at 349, 924 P.2d at 611 (quoting *Matter of Estate of Bagley*, 117 Idaho at 1093, 793 P.2d at 1265). Without the magistrate court's reasoning, this Court has no way to review whether the Rule 809 motion was granted upon a showing of unique and compelling circumstances. Therefore, we conclude that the district court correctly determined that the magistrate court did not reach its decision to remove the *nunc pro tunc* verbiage by an exercise of reason.

**C. The district court did not err in concluding the magistrate court abused its discretion in including the SBP coverage in the Amended Decree.**

According to Mark Sullivan, a purported expert in military divorces hired by Desiree, the "SBP is a survivor annuity associated with the military retirement to which [Andrew] is entitled

upon the completion of at least 20 years of creditable service." "The benefit is 55% of the retired pay base, and during the marriage [Desiree] was covered as the SBP beneficiary of [Andrew]."

The Stipulation, entered into by the parties on June 15, 2017, was silent as to the election of SBP coverage. Desiree first raised the issue of SBP coverage in a motion to continue hearing on August 10, 2017. In an affidavit, Desiree's counsel stated that Sullivan "said that there are three assets which have likely not been considered in the contemplated agreement. A. Accrued leave (which can be as much as $15,000[)] B. USAA insurance, and C. [The] SBP survivor benefit if [Andrew] dies first[.]" Desiree's proposed decree, filed on February 21, 2018, prior to the entry of the Original Decree, also listed the SBP coverage as a community asset (along with Andrew's accrued leave).

At the hearing on February 26, 2018, the magistrate court declined to include the SBP coverage in the Original Decree:

> MS. FLOOD-BRENNAN: And could I – could I just ask the [c]ourt for one other thing? Instead of saying "I'm retaining jurisdiction over the retirement," could the [c]ourt at least say, "I'm retaining jurisdiction over all possible military benefits that haven't been included in the divorce?" Because there are other things besides just retirement that are at issue here.
>
> THE COURT: I'm retaining jurisdiction over anything that was in – that had to do with retirement in the decree that I just signed.
>
> MS. FLOOD-BRENNAN: Because there's a survivor benefit that's really important and it's not in the decree.
>
> THE COURT: Well –
>
> MS. FLOOD-BRENNAN: And if Mr. Horton passes away in the near future, she's not going to get it.
>
> THE COURT: And it's – that's not information, okay, that was addressed at the trial. So it's – the trial was the trial. And if it needs to get changed, then there's – there's procedures for that. But at this particular point…

(Off the record in this matter.)

(Although there was not a trial in this case, the magistrate court explained at the hearing on May 22, 2018, that it "looked at the [S]tipulation as a trial[.]") However, at the hearing on May 22, 2018, the magistrate court concluded that the SBP coverage was an "omitted asset" and reversed course: "The omitted assets. I will find that it's justifiable to amend this, based on inadvertence, which is [Rule] 809.1."

15

The district court concluded that the magistrate court had abused its discretion when it required Andrew to elect the SBP coverage for Desiree. The district court noted that "[t]he transcript of the [S]tipulation does not contain any reference to" the SBP coverage; rather, Desiree first raised the issue months after the parties entered into the Stipulation.[4] The district court further noted that the parties disagreed as to whether the SBP coverage was a community asset. The district court reasoned:

> The issue appears to be whether election of survivor benefit coverage is actually a community asset to be determined by the court in divorce proceedings. If so, then whether to require its election was a discretionary decision for the court (*e.g.*, *Papin v. Papin*, 166 Idaho 9, [34,] 454 P.3d 1092, 1117 (2019)), and the court could have dealt with the issue at this later date under the guise of retaining jurisdiction over the military accounts.

The district court concluded that the magistrate court "provided no legal or factual analysis as to how it determined the [SBP] Coverage was a community asset." "It also provided no explanation as to why it included it as a community asset (over the objection of [Andrew]) nearly sixteen (16) months after the parties stipulated to a property division."

On appeal, Desiree argues that the magistrate court "had not only the legal authority to require Andrew to elect the military [SBP coverage], but the obligation to do so." Desiree contends that the SBP "is a survivor annuity that was earned during the marriage" and is thus community property. Desiree cites twelve cases—none from Idaho—to support this contention. Andrew responds that the SBP coverage was not part of the Stipulation. He argues that the district court correctly determined that the magistrate court abused its discretion. Pointing to *Ross v. Ross*, 103 Idaho 406, 648 P.2d 1119 (1982), Desiree replies that Andrew should be estopped from attempting to change the Amended Decree because he benefitted from the magistrate court's decision to not split Andrew's accrued leave between the parties.

As a preliminary matter, we conclude that Desiree's reliance on *Ross* in her effort to estop Andrew from challenging the SBP coverage election is misplaced. In *Ross*, the Idaho Supreme Court held that quasi-estoppel barred a wife in a divorce action from challenging the divorce decree. 103 Idaho at 408–09, 648 P.2d at 1121–22.

> [T]he doctrine of quasi-estoppel requires that the offending party must have gained some advantage or caused a disadvantage to the party seeking estoppel; induced the

---

[4] The district court concluded that Desiree first raised the issue of the SBP coverage at the hearing on May 22, 2018. However, it appears from the record that Desiree first raised the issue in a motion to continue hearing that she filed on August 10, 2017.

16

party seeking estoppel to change its position to its detriment; and, it must be unconscionable to allow the offending party to maintain a position which is inconsistent from a position from which it has already derived a benefit. *City of Sandpoint v. Sandpoint Independent Highway Dist.*, 126 Idaho 145, 151, 879 P.2d 1078, 1084 (1994) (citing *Tommerup v. Albertson's, Inc.*, 101 Idaho 1, 6, 607 P.2d 1055, 1060 (1980)).

*Thomas v. Arkoosh Produce, Inc.*, 137 Idaho 352, 357, 48 P.3d 1241, 1246 (2002) (alteration in original).

After the entry of the divorce decree, the wife in *Ross* "received large amounts of property [and] had repeated executions issued on the judgment and received approximately $67,000 in cash in settlement of certain of those executions[.]" 103 Idaho at 409, 648 P.2d at 1122. This Court explained:

Because [the wife] initially sought the divorce and argued that a divorce should be granted to her, and the entry of the decree enabled [the husband] to remarry, as he did, *and the [wife] took advantage of the favorable provisions of the decree of divorce*, we hold that it is unconscionable for her to now maintain an inconsistent position, and therefore, she is estopped to deny its validity.

*Id.* (italics added). Here, Desiree has not provided any evidence that Andrew has attempted to use the decree to gain some advantage, nor has she illustrated how Andrew's current position is inconsistent with his prior position. Desiree is essentially arguing that, simply because the magistrate court ruled in Andrew's favor on the accrued leave issue, he should be estopped from challenging the inclusion of the SBP coverage. By this logic, a party would be estopped from appealing any erroneous decision by a lower court so long as there was at least one decision the lower court made—no matter how inconsequential to the litigation—that favored that party. Instead, the only valid appeal would be when a party appeals from a proceeding at which that party lost on every issue. We find Desiree's argument unpersuasive.

Moreover, "[a]s an affirmative defense, the burden is on [the party asserting the defense] to prove the elements of quasi-estoppel by a preponderance of the evidence." *Thomas*, 137 Idaho at 358, 48 P.3d at 1247. During the intermediate appeal before the district court below, Andrew expressly argued in his opening brief that the magistrate court's choice to "decline[] to address accrued leave" "should have guided [its] decision on the [SBP] Coverage election as well." Despite this, Desiree did not raise quasi-estoppel in her briefing before the district court, nor did she raise it in her opening brief before this Court. Thus, even if she could prevail on the merits of a quasi-estoppel claim—which she cannot—she has not properly raised the claim on appeal. *See Suitts v.*

*Nix*, 141 Idaho 706, 708, 117 P.3d 120, 122 (2005) ("A reviewing court looks only to the initial brief on appeal for the issues presented because those are the arguments and authority to which the respondent has an opportunity to respond in the respondent's brief."). As such, we decline to estop Andrew from challenging the SBP coverage and will reach the merits of the issue at hand.

Next, as discussed above, the Stipulation is a binding settlement agreement. Therefore, the next inquiry is whether Desiree was intended to receive the SBP coverage pursuant to the Stipulation. "It is well established in Idaho that when construing a party's settlement agreement, normal rule[s] of contract construction apply." *Bondy v. Levy*, 121 Idaho 993, 996, 829 P.2d 1342, 1345 (1992). "The primary objective in construing a contract is to discover the intent of the parties, and in order to effectuate this objective, the contract must be viewed as a whole and considered in its entirety." *Id.*

> The determination of a contract's meaning and legal effect are questions of law to be decided by the court where the contract is clear and unambiguous. However, where a contract is determined to be ambiguous, the interpretation of the document presents a question of fact which focuses upon the intent of the parties. The determination of whether a contract is ambiguous or not is a question of law over which we may exercise free review, and in determining whether a contract is ambiguous, our task is to ascertain whether the contract is reasonably subject to conflicting interpretation.

*Id.* at 996–97, 829 P.2d at 1345–46 (internal citations omitted).

If "the contract is clear and unambiguous, [] courts cannot revise the contract in order to change or make a better agreement for the parties." *Id.* at 997, 829 P.2d at 1346. If, however, the contract is ambiguous, "the magistrate's interpretation of the [agreement] will be upheld if supported by substantial and competent evidence." *Toyama v. Toyama*, 129 Idaho 142, 144, 922 P.2d 1068, 1070 (1996).

We hold that the Stipulation is ambiguous as to the SBP coverage. With regard to the military benefits, the Stipulation provided:

3. The military pension plan in Andrew's name shall be awarded as follows:

> A. All funds earned up to the date of marriage, August 19, 1998, shall be awarded to Andrew; and

> B. All funds earned from August 19, 1998, until the date of the entry of this judgment and decree re: divorce shall be equal – shall be equally divided between the parties, since this portion represents the community property portion of the earnings.

Thus, because the Stipulation is silent as to the SBP coverage and Desiree did not bring the SBP coverage to the attention of the magistrate court until months after the Stipulation was entered into the record, it could reasonably be determined that the parties did not intend Desiree to receive the SBP coverage.

On the other hand, it also appears that, pursuant to section 3.B of the Stipulation, the parties intended to split Andrew's military pension fifty-fifty. Without the election of the SBP coverage, Desiree would only receive her fifty percent of Andrew's pension as long as Andrew lives; if Andrew were to pass away before retiring, Desiree would get nothing. Additionally, because the magistrate court "retained jurisdiction"[5] over Andrew's pension for the purpose of ironing out the specific language the military would require, the fact that the Stipulation is silent as to the SBP coverage does not necessarily mean that the parties meant it to be excluded. Thus, it could reasonably be determined that the parties intended Desiree to receive the SBP coverage (so long as she paid any additional expense necessary for the benefit). Because there are at least two reasonable, yet conflicting interpretations, the Stipulation is ambiguous as to the SBP coverage and therefore, "the interpretation of the [Stipulation] presents a question of fact which focuses upon the intent of the parties." *See Bondy*, 121 Idaho at 997, 829 P.2d at 1346.

The magistrate court did not expressly address the intent of the parties. However, though the magistrate court did reverse its original ruling that the SBP coverage not be included in the decree of divorce, both of the magistrate court's rulings were consistent in concluding that the SBP coverage was not contemplated in the Stipulation. At the hearing on February 26, 2018, the magistrate court stated that the SBP coverage was not part of the Stipulation. Likewise, on May 22, 2018, the magistrate court concluded that the SBP coverage was an asset that had been omitted from the Stipulation. As noted above, the SBP coverage was not raised before the magistrate court until August 2017, months after the parties entered into the Stipulation. Therefore, the determination that the SBP coverage was not contemplated in the Stipulation is supported by substantial and competent evidence.

Because the Stipulation does not govern the SBP coverage, Idaho Code section 32-916 applies: "The property rights of husband and wife are governed by [Idaho Code title 32, chapter

---

[5] Though the magistrate court stated several times it was "retaining jurisdiction" over the retirement accounts, this phrasing was legally inaccurate. In accepting the Stipulation, the magistrate court simply made an interlocutory decision; it did not relinquish jurisdiction over any part of the case at hand and we caution against the use of the phrase "retained jurisdiction" in this context.

9], unless there is a marriage settlement agreement entered into during marriage containing stipulations contrary thereto." Whether the SBP benefit is an asset capable of division here is not a question before this Court. Therefore, we agree with the district court that, upon remand, the magistrate court should make proper findings of fact and conclusions of law in the first instance as to whether the election of the SBP coverage for Desiree is an asset of the marital community.

In sum, the district court correctly concluded that the magistrate court abused its discretion when it decided to order Andrew to elect the SBP coverage for Desiree.

### D. The district court erred in concluding the magistrate court abused its discretion in deciding to reject Andrew's requested language regarding the FERS account in the Amended Decree.

Regarding Desiree's FERS account, the Stipulation provided:

4. The FERS account in Desiree's name – and I believe FERS stands for Federal Employment Retirement System – shall be awarded as follows:

> A. All funds earned up to the date of the marriage, August 19, 1998, shall be awarded to Desiree; and

> B. All funds earned from August 19, 1998, until the date of the entry of this judgment and decree re: divorce shall be divided – shall be equally divided between the parties, since this portion represents the community property portion of the earnings.

On February 21, 2018, Desiree submitted a proposed decree, which offered the following language: "The FERS account, in Desiree's name, shall be awarded as follows: All funds earned until the date of the entry of this Judgment and Decree Re: Divorce shall be equally divided between the parties." Without argument or discussion at the February 26, 2018, hearing, the Original Decree adopted the language from the proposed decree.

On March 12, 2018, Desiree moved to modify the Original Decree. She filed an affidavit, "request[ing] that the [magistrate] court specify that Andrew is only entitled to a share of [Desiree's] FERS/civil benefits after the time [they] were married." At the hearing on May 22, 2018, counsel for Andrew explained that the reason the FERS account was divided completely in half was because Desiree had cashed out the portion that accrued prior to the marriage but "[t]hey bought back that component during the marriage; therefore, the whole thing is community property and that's why it was addressed that way." Desiree contested Andrew's characterization of the account, arguing that "there [was] no evidence to suggest that" the parties had cashed out and bought back a portion of the FERS account, and further argued that the parties had not agreed to that in the Stipulation. The magistrate court stated:

As far as FERS is concerned, I want the same kind of language [as was used for Andrew's retirement account], whatever language is needed, so that Mr. Horton gets the same amount that he's supposed to get, the – the appropriate amount. If it was a refund – if it was taken out, used for community debts or whatever it was by the married couple and then it was refunded using community property, then it's community property. It has been transmuted. So that will be divided 50/50.

On June 11, 2018, Desiree filed a proposed Amended Judgment and Decree of Divorce, which provided: "The FERS account in Desiree's and/or Andrew's name shall be awarded as follow[s]: All funds earned during the marriage shall be equally divided between the parties." Andrew objected, requesting that the language regarding the FERS account remain the same as the language in the Original Decree because "[t]here does not appear to be any reason to have changed this language."

At the hearing on July 23, 2018, Desiree continued to assert that Andrew was not entitled to any of the funds in the FERS account that were accrued prior to the marriage. Andrew maintained that the parties had agreed to split the entirety of the FERS account at the time of the Stipulation because the premarital portion had been cashed out and purchased back after the marriage. The following exchange then occurred:

THE COURT: Okay. Wait a minute. Wait a minute. How about this – have a seat.

MR. WAITE: Uh-huh.

THE COURT: Including, but not limited to, any purchase of cashed out FERS –

MS. FLOOD-BRENNAN: Uh-huh.

THE COURT: – funds prior to marriage –

MS. FLOOD-BRENNAN: Uh-huh.

THE COURT: – that were paid for by community funds. Period.

The magistrate court clarified, "[T]hat's the language I want in there" and stated, "And that – that will be the order of the [c]ourt, as far as that language is concerned."

On October 1, 2018, Desiree filed a Motion for Entry of Amended Decree and Motion to Reconsider *Nunc Pro Tunc*. Desiree again "assert[ed] there were no FERS funds cashed out and purchased back during the marriage." She filed a proposed Amended Decree, which provided: "The FERS account in Desiree's and/or Andrew's name shall be awarded as follow[s]: All funds earned or acquired during the marriage shall be equally divided between the parties." Andrew objected, arguing that the magistrate court had expressly ordered at the July 23, 2018, hearing that the decree state, "All funds earned or acquired during the marriage, *including but not limited to*

21

*any cashed out FERS funds that were purchased back during the marriage*, shall be equally divided between the parties." (Italics added.)

At the hearing on October 16, 2018, the magistrate court refused to include Andrew's requested language, stating:

> I – I do not – I am not going to put a different label on the funds that she purchased back where she had borrowed them from – from, before, because – well, I'm just not going to do it, okay? I'm leaving it as it is. It's just – I'm not going to get this anymore convoluted than it already has [gotten].

The Amended Decree was then entered on October 18, 2018, which utilized language regarding the FERS account that was identical to the proposed Amended Decree that Desiree filed on October 1, 2018.

On intermediate appeal, the district court concluded:

> The record does not reflect that the court below received any evidence in order to determine whether the FERS funds were community or separate property. Nor does the record reflect any reasoning or explanation as to why the court failed to include in the amended judgment the language that the court had previously ordered regarding FERS funds.

On appeal to this Court, Desiree argues that the portion of "the FERS account that she accumulated prior to the marriage" is her separate property. She further asserts that, pursuant to the Stipulation, the parties agreed to split only the portion of the FERS account that accumulated after they were married. Andrew responds that it is irrelevant whether the funds in the FERS account are community or separate property because the FERS account was subject to the Stipulation. Andrew further argues that the entirety of the FERS account was community property: "Desiree had cashed out her retirement benefit early in the marriage, and then later the two of them bought back that retirement credit to put her in a position of having a better and earlier retirement package."

Because the Stipulation is a binding settlement agreement, the next inquiry is whether the parties intended to split the entirety of the FERS account. *See Bondy*, 121 Idaho at 996, 829 P.2d at 1345. As noted above, if "the contract is clear and unambiguous, [] courts cannot revise the contract in order to change or make a better agreement for the parties." *Id.* at 997, 829 P.2d at 1346. If, however, the contract is ambiguous, "the magistrate's interpretation of the [agreement] will be upheld if supported by substantial and competent evidence." *Toyama*, 129 Idaho at 144, 922 P.2d at 1070.

22

We conclude that the Stipulation is not ambiguous. With regard to the FERS account, the Stipulation provided:

4. The FERS account in Desiree's name – and I believe FERS stands for Federal Employment Retirement System – shall be awarded as follows:

A. All funds earned up to the date of the marriage, August 19, 1998, shall be awarded to Desiree; and

B. All funds earned from August 19, 1998, until the date of the entry of this judgment and decree re: divorce shall be divided – shall be equally divided between the parties, since this portion represents the community property portion of the earnings.

While the Stipulation makes no reference to any funds that were "bought back" during the marriage, it clearly delineates which funds were to be split by the parties and, importantly, clarified that there were funds that would solely be awarded to Desiree. Andrew's contention that the parties intended to split the entire FERS account is belied by the express language of the Stipulation. As a result, even if the Stipulation is at odds with conventional community property law, the Stipulation controls. I.C. § 32-916 ("The property rights of husband and wife are governed by [Idaho Code title 32, chapter 9], *unless* there is a marriage settlement agreement entered into during marriage containing stipulations contrary thereto." (italics added)).

While the district court correctly noted that the magistrate court did not "receive[] any evidence in order to determine whether the FERS funds were community or separate property[,]" any such determination would be irrelevant because the Stipulation resolves this issue. The magistrate court's decision at the October 16, 2018, hearing to reject Andrew's requested language regarding the FERS account was correct because the requested language would be contrary to the Stipulation.

In sum, the district court erred in concluding the magistrate court abused its discretion in deciding to reject the previously-ordered language regarding the FERS account in the Amended Decree.

**E.  Neither party is entitled to attorney fees or costs on appeal.**

Both parties request attorney fees and costs on appeal. Desiree argues she should be awarded attorney fees pursuant to Idaho Code section 12-121 and Idaho Appellate Rule 41. Desiree asserts that Andrew's appeal to the district court was frivolous and he mischaracterized the magistrate court's rulings and the facts before the magistrate court during the intermediate appeal.

Andrew requests attorney fees under Idaho Code sections 12-121 and 12-123, as well as Idaho Appellate Rule 41. Andrew argues that, because the magistrate court's rulings "so clearly were not the product of any proper exercise or discretion[,]" it is unreasonable and frivolous for Desiree to have brought this appeal.

In reply, Desiree asserts that she did not bring this appeal frivolously. Instead, she contends, it is Andrew who is acting frivolously in continuing to "insist[] without evidence that the entire matter was resolved in mediation[.]"

Idaho Code section 12-121 provides that, "[i]n any civil action, the judge may award reasonable attorney's fees to the prevailing party or parties when the judge finds that the case was brought, pursued or defended frivolously, unreasonably or without foundation." I.C. § 12-121. Here, both parties won below: Desiree at the magistrate court level and Andrew at the district court level. It was not unreasonable for Desiree to appeal the district court's reversal of her win before the magistrate court, nor was it unreasonable for Andrew to defend his win before the district court. Additionally, as discussed above, there is no case law in Idaho that clearly supports or contradicts either party's arguments. As such, we conclude that neither party acted frivolously on appeal.

Idaho Code section 12-123 governs "Sanctions for frivolous conduct in a civil case[.]" I.C. § 12-123. Section 12-123, however, "does not apply on appeal." *Papin*, 166 Idaho at 43, 454 P.3d at 1126 (quoting *Tapadeera, LLC v. Knowlton*, 153 Idaho 182, 189, 280 P.3d 685, 692 (2012)). Therefore, although Andrew is victorious on appeal, he is not entitled to attorney fees under section 12-123.

Additionally, because Andrew is the prevailing party as to two issues, and Desiree is the prevailing party as to one issue, we deny both parties costs on appeal. *See Sommer v. Misty Valley, LLC*, Dkt. No. 48007, 2021 WL 6017844, at *17 (Idaho Dec. 21, 2021) ("Given the mixed results in this case, neither party is the prevailing party on appeal, thus, we deny fees and costs to both parties.").

## IV. CONCLUSION

For the foregoing reasons, we affirm in part and reverse in part the decision of the district court. The case is remanded for further proceedings consistent with this opinion. We decline to award costs or attorney fees to either party.

Chief Justice BEVAN, Justices BRODY, MOELLER and ZAHN CONCUR.